EDWARD MOONEY vs. DAVID BEATTIE & another.

Bristol.    January 3, 1902. — February 26, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Negligence,* Employer's liability.

In an action by a mason against his employer, a building contractor, for injuries caused by the explosion of a stone from dynamite which had been left in it after it had been blasted from the quarry, it appeared, that the defendant purchased the stone from the quarryman in the usual course of business and that he did not inspect it, that the inspection of stones after blasting is a general practice at quarries and that contractors never inspect stones bought from quarrymen. *Held,* that a verdict should have been ordered for the defendant; that the defendant owed the plaintiff no duty of inspection, having the right to assume that the proper inspection had been made at the quarry; and that, if the quarrymen were inexperienced or negligent, this was immaterial unless that fact had been brought to the attention of the defendant.

TORT by a mason against his employers, building contractors, for negligence in not providing safe and suitable materials for the plaintiff's work and in failing to inspect a stone containing dynamite which exploded and injured the plaintiff while in the exercise of due care.    Writ dated June 17, 1899.

At the trial in the Superior Court, *Bond,* J. refused to direct a verdict for the defendants.    The jury returned a verdict for the plaintiff in the sum of $2,500; and the defendant alleged exceptions.

*J. F. Jackson, D. F. Slade & R. P. Borden,* for the defendants.

*J. W. Cummings & C. R. Cummings,* for the plaintiff.

HAMMOND, J.    This is an action at common law to recover compensation for injuries received by the plaintiff while in the employ of the defendants, who were contractors and builders, engaged, at the time of the accident, in the construction of a mill.    The plaintiff had been a mason for thirty years, and, while at work laying the foundation of the mill, and in the exercise of due care, was injured by the explosion of a stone. The evidence tended to show that the stone was being transferred by the defendant's servant, a mason's tender, from the wagon in which it had been brought to the premises to the place where it was to be used in building the wall, and that in

the course of his employment the man threw it to the ground, so that it struck near the plaintiff at work in a shallow trench and exploded. The cause of the explosion was dynamite which remained in the stone after it had been blasted from its bed in the quarry. The stone had been purchased in due course of business by the defendants of the quarrymen.

There is very little dispute as to facts. The defendants made no inspection of the stone, and the main question is whether, under the circumstances of the case, this failure to inspect will warrant a finding that they were negligent in their duty to the plaintiff to use reasonable care in the selection of suitable materials for the work.

It appeared at the trial, that the quarrymen from whom these stones were bought by the defendants used both powder and dynamite for blasting, and that where such explosives are used, sometimes, but rarely, a cartridge in a series fails to explode; and the uniform testimony was, that an inspection should be made after every blast and before the stones are handled, to ascertain whether there is any unexploded cartridge; and that it was the practice to make that inspection after every blast, both for the safety of the men who are to handle the stones in the quarry and because it can best be done by the men who know the depth to which the holes are drilled, and therefore can easily ascertain whether there is anything left therein.

One Sullivan, called for the plaintiff, testified that he had been a stone mason for about twenty-five years; and on cross-examination, that he had worked upon a great many buildings where stone had been used, and had never known a stone to explode after it had been brought to the place where the building was to be erected, and that he had "never known a stone to be inspected at the place where the building was being put up to see whether or not there was dynamite in it." McMahon, another witness for the plaintiff, said that he had been a mason twenty-two years, and had known of the explosion of one stone only. Harrington, an expert quarryman, also called by the plaintiff, testified that he had been in the business forty years, — thirty years as foreman, — and that he never knew of stones exploding because of dangerous explosives in them after they had been taken from the quarry; and various contractors testi-

fied that they never inspected stones bought of quarrymen. Indeed the whole testimony showed, that the inspection was a general practice at the quarries, and all the expert witnesses, both quarrymen and contractors, testified that they never knew such an inspection to be made anywhere else. Not a single witness was called to show that the contractor ever inspected the stone purchased by him from quarrymen. It is true that several witnesses testified to an explosion in Fall River while the stone was being shaped by a mason, but the defendants in their brief contend, and we do not understand the plaintiff to deny it, that they all refer to the incident out of which the case of *Neveu* v. *Sears*, 155 Mass. 303, arose.

The defendants did no more and no less than is universally done. They bought the stones of a quarryman. It is never the practice for the buyer to inspect stones thus bought. The evidence shows, that the only way to inspect would be to turn over each stone, and expose each side to view. Some might have to be turned over with a derrick, others might be turned over by hand. Should a drill-hole appear, it must be sounded with a stick or tamping rod, and by one familiar with the use of dynamite. At this mill from fifty to eighty tons of stone were delivered each day, and the danger of explosion begins before they are unloaded. When the first stone is moved upon the wagon by which it is delivered to the purchaser, the danger, if any there be, begins. That is neither the time nor the place for inspection, and so runs all the evidence. Such a course of inspection, while possible, is manifestly impracticable, and it is never adopted.

It is contended by the plaintiff, however, that the quarrymen were inexperienced, that the evidence would justify the jury in finding, that they never inspected the stones after a blast, and that the defendants, one of whom visited the quarry several times, might have known these facts. The evidence, as to whether the quarrymen of whom the defendants bought the stone were not in the habit of inspecting after a blast, is conflicting, but, even if they did not inspect, the failure may be evidence of the negligence of the quarrymen but not of the defendants, in the absence of any evidence to show that this fact was brought to their attention. We do not think there is any evidence to

show, that the quarrymen were not in good standing, or that the defendants had any reason to believe to the contrary, or that there was no inspection at the quarry.

Judging the conduct of the defendants by the usual standard under the circumstances, we do not think that the defendants are shown to to have exercised less than reasonable care and prudence in the discharge of their duty to the plaintiff. The accident was the result of an unforeseen and almost unprecedented combination of circumstances, for which the defendants cannot reasonably be held responsible.

The case is clearly distinguishable from *Neveu* v. *Sears, ubi supra,* where the defendant was both quarryman and contractor, upon which the plaintiff relies, and must be held to belong to the class of which *Shea* v. *Wellington,* 163 Mass. 364, is an example. See also *Garragan* v. *Fall River Iron Works Co.* 158 Mass. 596.

*Exceptions sustained.*