## MARY T. KIRK *vs.* FRANK M. STURDY & others.

Bristol.    October 25, 1904. — November 23, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability.

In an action, by a girl employed in a jewelry factory against her employer, for injuries from a pail of hot water which had been attached to a steam pipe at the top of the room falling on her head, it appeared, that the defendant did not own the building and had no control of the steam pipes, which as a part of the heating apparatus were under the exclusive control of the owner of the building, that the pail had been fastened to the pipe by the "head piper or plumber" of the owner of the building, to catch the drip from a leak in the pipe which he had attempted to repair, that the pail was plainly in sight, but the way in which it was attached to the pipe could not be seen from the floor, and there was nothing in the appearance of the pail to excite suspicion or to suggest that the plumber had not done his duty properly. *Held*, that there was no evidence of negligence on the part of the defendant toward the plaintiff in failing to inspect the fastening of the pail, as the defendant had a right to assume that due care would be used by those in charge of the pipes, and that the plaintiff's remedy, if any, was against the owner of the building.

TORT, by a girl twenty-three years of age employed in the defendants' jewelry factory at Attleborough, for personal injuries from a pail of hot water which had been attached to a steam pipe at the top of the room falling on her head. Writ dated September 3, 1902.

At the trial in the Superior Court *Hitchcock*, J. at the close of the evidence ordered a verdict for the defendants; and the plaintiff alleged exceptions.

*F. S. Hall & C. C. Hagerty*, for the plaintiff.

*W. H. Fox, F. B. Fox & F. B. Byram*, for the defendants.

HAMMOND, J.   The law as to the duty owed by the master to the servant with respect to the tools and materials of which the latter is to make use, and the place in which he is to work, is well settled by numerous decisions, and, speaking generally, it is that the master is to use due care to see that in neither is there danger to the careful servant.   Where these things are under the exclusive control of the master he is answerable for such care, whether the duty be performed by him in person or be

delegated to another. He cannot free himself from responsibility for the proper discharge of a duty resting upon him in person by delegating its performance to another. But even where the tools and materials are exclusively under the control of the master the degree of care required, as in other branches of law and in every line of human conduct, varies of course with circumstances. In *Garragan* v. *Fall River Iron Works Co.* 158 Mass. 596, which was an action by a servant against his master for injuries received by reason of the rotten condition of the bagging of a bale of cotton, it was held that a purchaser of cotton in bales is not bound to have the bagging inspected with a view to ascertain whether it is strong enough to hold iron hooks inserted in it for the purpose of moving the cotton. In *Shea* v. *Wellington*, 163 Mass. 364, it was held that the owner of a quarry did not owe to his workmen the duty of inspecting an exploder well and favorably known in the market. In the first case it was said: " The performance of such a duty [of inspection] would be impracticable, and no case is cited which holds that such duty exists." In the second case it was said that in view of all the circumstances it would be unreasonable to hold "that quarrymen using these exploders owed their employees a duty to have them inspected by a competent person as to the mode and workmanship of their construction." In *Mooney* v. *Beattie*, 180 Mass. 451, which was an action by a mason against his master, a building contractor, for injuries caused by the explosion of a stone from dynamite left in it after it had been blasted from the quarry, where it appeared that the defendant purchased the stone in the usual course of business, without inspecting it, the same principle was applied, the court saying that "Such a course of inspection, while possible, is manifestly impracticable, and it is never adopted." In all of the above cases the appliances were under the exclusive control of the master, and allusion to them is made here to illustrate the doctrine that even where the master has such control the duty resting upon him does not always include that of inspection. See also *Reynolds* v. *Merchants' Woolen Co.* 168 Mass. 501.

In the present case the evidence was undisputed that the defendants did not own the building where the plaintiff was injured, but hired certain rooms in it as tenants at will; that

they had no control of the steam pipes, which, with the heating apparatus, were under the exclusive control of the owners of the building, and that the latter furnished everything in the room except the chairs and tools with which the plaintiff and her fellow servants did their work. And the question is how far the defendants are answerable to the plaintiff for the improper fastening of the pail which was attached to the pipe to catch the drip. The pail was attached by the "head piper or plumber" of the owners of the building after "mending the leak" in the pipe. The pail was plainly in sight, but the manner in which it was attached to the pipe does not appear to have been visible from the floor. There was nothing in the appearance of the pail, as it hung there, to excite suspicion or to suggest that the plumber had not properly done his duty; and in the absence of any such appearance the defendants had the right to assume that due care had been used, and no duty of inspection rested upon them. In principle the case cannot be distinguished from *Moynihan* v. *King's Windsor Cement Dry Mortar Co.* 168 Mass. 450. In that case the plaintiff was set to work by the defendant upon a temporary or swinging stage, of which one end was supported by a permanent stage owned by the defendant and attached to its warehouse, and the other by ropes attached to a vessel discharging its cargo. The defendant had nothing to do with the ropes supporting this end, the method of attaching it to the vessel being entirely under the control of the captain of the vessel. The plaintiff, who did not know by whom the ropes were put together, furnished and managed, while at work upon the stage was injured by the falling of the stage, the result of the insufficiency of the ropes. It was held that inasmuch as " the support, control, and management of the outer end of the stage belonged to the captain . . . the duty and responsibility primarily rested upon him ; and the defendant cannot be held responsible, unless upon proof of neglect of a duty of inspection and warning. In the absence of anything to excite suspicion or apprehension, the defendant might assume that due care would be used by those in charge of the vessel." As in that case, so in this, the defendant had the right under the circumstances to assume that due care would be used by those who had exclusive control of the pipes.

It is argued by the plaintiff that the length of time during which the pail had been hanging might show ground for inspection, but that consideration does not seem to us of weight enough to turn the scale in her favor. Her right of action, if any she has, is apparently against the owners of the building.

*Exceptions overruled.*