O'DOHERTY v. POSTAL TELEGRAPH–CABLE CO. et al.

(Supreme Court, Appellate Division, Second Department.   October 12, 1909.)

1. MASTER AND SERVANT (§ 106*) — INJURY TO SERVANT — INDEPENDENT CONTRACTOR.

    A telephone company hiring from a reputable company a scow, coal, water, and an engineer for a specified sum per day for the engineer and for the use of the scow may assume that the company will not lease a boiler ready to explode, and it is not charged with negligence in relying on the performance of that duty by the company, and is not liable for injury to an employé caused by the explosion of the boiler.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 193, 195–198; Dec. Dig. § 106.*]

2. DEATH (§ 99*)—ACTION FOR DEATH—DAMAGES.

    A verdict for $20,000 for negligent death of a healthy, sober, and industrious man 43 years old, earning $60 per month used in the support of his family, consisting of a wife and six children, the oldest of which is 12 years, is excessive, though the jury are not concluded by the annuities table showing the pecuniary value of his life, based on earnings, at $8,213.-14, and though the jury may consider the pecuniary value of the father's advice and care to his children, and the verdict should be reduced to $15,000.

    [Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Appeal from Trial Term, Kings County.

Action by Charlotte O'Doherty, as administratrix of William O'Doherty, against the Postal Telegraph-Cable Company and the American Telephone & Telegraph Company. From a judgment for plaintiff, and from an order denying motions for new trial, defendants appeal. Judgment against the American Telephone & Telegraph Company reversed, and new trial granted, and judgment against the Postal Telegraph-Cable Company conditionally affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, GAYNOR, RICH, and MILLER, JJ.

Thomas Kelby, for appellant Postal Telegraph-Cable Co.

Charles F. Brown (Grant C. Fox, on the brief), for appellant American Telephone & Telegraph Co.

James C. Cropsey, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MILLER, J. The plaintiff's intestate, an employé of the appellant the American Telephone & Telegraph Company (which for brevity I shall call the Telephone Company), was killed by the explosion of a boiler on a scow hired by it of the appellant Postal Telegraph-Cable Company (which I shall call the Postal Company) for use in taking up and relaying cables. The Telephone Company had hired the scow of the Postal Company on a number of prior occasions for periods varying from one to seven or eight days. The latter company furnished scow, coal, water, and an engineer, and received a stipulated sum per day for the engineer and for the use of the scow. At the time of the explosion the scow was being towed from Jersey City to Cartaret, where the work for which it was hired was to be done. There was evidence tending to show that the explosion was due to a defective condition of the tubes of the boiler.

The Telephone Company is not liable unless it was its duty to inspect the boiler after hiring the scow and before starting to tow it to the place where it was to be used. The lessor, a reputable company, impliedly represented that the scow and its attachments were in a reasonably safe condition for the use intended. It would not be likely to occur to any one hiring a scow under the circumstances disclosed in this case to have it overhauled by an expert before undertaking to use it, and it may safely be assumed that that is not the practice. The Telephone Company could assume that the Postal Company would not lease a boiler just ready to explode, and should not be charged with negligence for relying upon the performance of duty by that company. While the employer must exercise reasonable care to furnish safe implements, he is not liable for the negligence of others not his servants, nor is he negligent in relying upon the performance of duty by reputable contractors. Devlin v. Smith, 89 N. Y. 470, 42 Am. Rep. 311; Kirk v. Sturdy, 187 Mass. 87, 72 N. E. 349, and cases cited. The respondent relies upon the case of McGuire v. Bell Telephone Company, 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437, but that case is distinguishable in several respects. The defendant in that case was a mere gratuitous licensee, and, in fact, had adopted the poles upon which it was permitted to string its wires as a part of its permanent line. The licensor owed it no duty. It appeared that it was the common practice for men to go ahead of the linemen to test the poles. The respondent also relies upon the line of cases involving the duty to inspect cars before making up and sending out trains. Those cases may in principle be like McGuire v. Bell Telephone Company, supra, but they are readily distinguishable from this case. In view of the likelihood of injury to cars and of the dangers likely to result from defective equipment, the railroad owes its employés the duty of frequent inspection. Cars have to be shifted from one road to another, and a train is apt to contain cars belonging to a number of different roads, but in making up the train the duty of inspecting the cars is the same regardless of their ownership.

The evidence fairly presented a question for the jury respecting the negligence of the defendant Postal Company. It claimed to have

made a bill of sale of its property many years before to the Commercial Cable Company, but the evidence is that it assumed to lease the scow as owner. It rendered bills and received the pay therefor, and it employed the engineer and retained control and possession of the scow. While the fact of the explosion alone did not establish its negligence, that, in connection with the testimony respecting the leaky condition of the tubes and the other evidence in the case, presented a question for the jury. We do not think that we would be justified in setting aside the verdict as against the weight of evidence, and find no reason to order a new trial for any of the exceptions called to our attention. However, a verdict for $20,000 appears to us to be excessive.

The deceased was a strong, healthy, sober, and industrious man, 43 years of age, earning $60 per month, which, according to the evidence of the plaintiff, was all contributed to the support of his family. He left a widow and six children; the oldest being twelve years of age. It may fairly be assumed that he had reached the maximum of earning power. The pecuniary value of his life, then, measured solely by prospective earnings, estimated in accordance with the annuities table, was $8,213.14. Of course, the jury were not concluded by the annuities table, and they may have estimated, in view of the evidence respecting the health and habits of the deceased, that he would live longer than the average expectancy at his age. But, if his expectancy of life be estimated at twenty years, his earnings at the maximum would amount to but $14,400. That sum at 5 per cent. interest would produce his yearly income and leave the principal intact. In addition to earning power, the jury could consider the pecuniary value of the father's advice and care to his young children, which, of course, is largely a matter of speculation; but it seems to me that a sum which will more than produce his yearly income is certainly a liberal allowance for the pecuniary loss of the life of the deceased, taking into account all the elements which may properly be considered.

I recommend that the judgment against the defendant the American Telephone & Telegraph Company be reversed and that a new trial be granted, costs to abide the event; and that the judgment against the defendant the Postal Telegraph-Cable Company be reversed, unless the respondent stipulate to reduce the recovery to the sum of $15,000, and that in that case it be affirmed, without costs. All concur.