GEORGE WOLD, Respondent, *v.* ELDER, DEMPSTER & COMPANY, LTD., Appellant, Impleaded with TURNER & BLANCHARD, INC., Defendant.

Second Department, November 7, 1924.

Ships and shipping — action by longshoreman to recover for injuries suffered when derrick boom on ship fell and struck him — accident was caused by breaking of eye plate on mast — shipowner conceded that inspection was not made — jury justified in finding against shipowner that plate was cracked before work was begun and that defect could have been discovered by inspection — dismissal of complaint as to stevedores who employed plaintiff not error.

In an action to recover damages suffered by the plaintiff, a longshoreman, when a derrick boom on a ship on which he was working fell and struck him, in which it appeared that the accident was caused by the breaking of an eye plate on the mast, which the shipowner conceded had not been inspected, the jury was justified in finding that the eye plate was cracked before the work was commenced, and that the defect could have been discovered by inspection.

A case of negligence was not made out against the stevedores who employed the plaintiff and, therefore, the court properly dismissed the complaint as to them.

APPEAL by the defendant, Elder, Dempster & Company, Ltd., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 23d day of January, 1924, upon the verdict of a jury for $12,500, and also from an order entered in said clerk's office on the 22d day of January, 1924, denying the defendant's motion to set aside the verdict and for a new trial made upon the minutes.

The plaintiff, a longshoreman employed by defendant Turner & Blanchard, Inc., while working as a gangwayman on the deck of the appellant's steamship *New Brunswick*, was injured by the fall of a boom, part of the ship's appliances in use for discharging the cargo of the steamship. The immediate cause of collapse of the boom was the breaking of an eye plate on a mast, which held a wire cable which in turn held the boom. There was no dispute as to the cause of the accident, the main issue arising on plaintiff's claim that the eye plate which gave way was in defective condition by reason of a crack discoverable by inspection of the surface of the plate. The defendant contended that the break was a clean break and that inspection would not have disclosed a defect. It was conceded that no inspection of the eye plate had been made prior to the accident, the defendant's contention being that as the steamship had been completed but six months at the time and had been in commission for but six months, it was not reasonable to anticipate any defect in the eye plate; that inspection had been made by the shipbuilders on completion of the vessel and that inspections

during the ensuing six months were not usual or necessary; that in the ordinary course " casual " inspections would be made by the shipowners every twelve months and a thorough examination every four years.   The plaintiff's witnesses testified that examination of the broken eye plate immediately after the accident showed rust on approximately one-third of the broken surface, and two of defendant's witnesses, employees of the builders of the vessel, testified that such rust or discoloration would indicate that the plate had · been cracked or broken for some time prior to the accident.   The trial justice dismissed the complaint as to defendant Turner & Blanchard, Inc., the stevedores who employed plaintiff, but submitted to the jury the question whether in the exercise of reasonable care the defendant, appellant, shipowner should have inspected the eye plate during the six months prior to the accident, and whether the alleged defect existed and whether it would have been discovered by such inspection.   The jury found a verdict for the plaintiff.

*Oliver C. Reynolds*, for the appellant.

*Bertrand L. Pettigrew*, for the respondent.

KELLY, P. J.:

The jury have found, as they might have found under the evidence, that the crack in the plate was discoverable by inspection, and that it was visible on the outside of the plate, the fracture showing rust extending over one-third of the plate.   True, this plate was forty-five feet up in the air.   But it was the " keystone of the arch."   On its security depended the safety of the life and limb of all persons using the derrick.   The steamship and this eye plate were exposed to stress of weather, storm, rain, snow and sleet, the bolt was subjected to strain every time cargo was loaded or unloaded.   We do not know the history of the vessel during the six months.   It is conceded that no examination was made of this plate.   It was forty-five feet above the deck, and the fracture was visible on the upper surface only, but it was easily reached.   *After the accident*, when defendant's acetylene burner was sent to take off the portion remaining, and he objected that it was too windy to do the work, defendant's shipyard manager had no difficulty in going up to the cross-tree where the plate was located and observing the plate so that he testifies to absence of rust at the break.   It seems to me, in view of the great danger to the men on deck caused by any defect in this plate, the jury were justified in finding that the officers of the ship should have caused some inspection to be made of the apparatus before they allowed it to be used for

30

unloading heavy cargo. When the general foreman of the steve-
dores reported to the chief officer that he was ready to go to work
unloading these mahogany logs, the officer said: " ' There is your
booms, everything is all right. What do you think about it? '
And I says, ' If you say so, it is all right.' I says, ' How about
those logs? ' He said, ' It took the logs in,' he says, ' there is no
reason why they shouldn't put them out.' "

There must have been some reason for the break. The boom
was rigged to lift five tons. It broke in lifting a weight of two
tons. Why? Plaintiff did not rely on the doctrine of *res ipsa
loquitur.* He gave evidence of a patent defect, a crack in this all-
important plate.

There was an endeavor on the part of defendant to show that
undue strain in lifting the logs, *i. e.,* if they were " snaked " out
from the space under the decks outside the square of the hatch,
or if in lifting or lowering them the winchman did not operate his
machine properly, if there was a jolt or jar, this might cause the
bolt to break. But there is no evidence that any such thing
occurred. On the contrary, plaintiff's evidence, and the evidence
of the winchmen, is that there was no undue strain, no " snaking "
out of the logs from under the deck, no improper handling of the
winch and falls connected with the logs.

I think the jury was justified in finding on the evidence that this
plate was cracked before the operation of unloading the vessel
began, that the defect in the plate could have been ascertained by
reasonable inspection, and it is conceded that there was no inspec-
tion. I think the evidence presented a case for submission to the
jury as to defendant's negligence, and the learned trial justice
submitted the issues in a charge to which no exception was taken
by defendant.

Defendant, appellant, excepted to the dismissal of the complaint
as to its codefendant Turner & Blanchard, Inc., and contends that
this was error. On the record I think that plaintiff failed to make
out a case of negligence against his immediate employer and that
the learned trial court was right in this ruling. The complaint
charged that the accident was occasioned by the negligence of
both defendants. If the appellant was negligent and such negli-
gence was a proximate cause of plaintiff's injuries, the appellant
was liable without reference to the negligence of its codefendant.
In fact, the learned trial justice charged the jury that defendant
would be liable only in case they found that its negligence was the
sole cause of the accident. My understanding of the law is that
where injury is the result of concurring negligence of two or more
parties, they may be sued jointly or severally.; the fact that one

of the wrongdoers may not be held accountable to the injured party will not operate to discharge the other, and the injured party may sue one, any or all of the joint tort feasors. (Addison Torts [6th ed.], chap. V, p. *94; *Clapp* v. *Town of Ellington,* 87 Hun, 542, 544; affd., without opinion, 154 N. Y. 781; *Kain* v. *Smith,* 80 id. 458; *Creed* v. *Hartmann,* 29 id. 591; *Roberts* v. *Johnson,* 58 id. 613; *Devlin* v. *Smith,* 89 id. 470; *O'Doherty* v. *Postal Telegraph-Cable Co.,* 134 App. Div. 298; *Kirk* v. *Sturdy,* 187 Mass. 87.) "Persons who co-operate in an act directly causing injury are jointly and severally liable for its consequences, if they acted in concert, or united in causing a single injury, even though acting independently of each other." (1 S. & R. Neg. [6th ed.] § 122, and cases cited.)

The judgment and order should be affirmed, with costs.

Present — KELLY, P. J., JAYCOX, KELBY, YOUNG and KAPPER, JJ.

Judgment and order unanimously affirmed, with costs.