### THE PRINCE RUPERT CITY.

### HEYER v. REARDON SMITH LINE, Limited.

District Court, N. D. Florida, Pensacola Division.

Dec. 7, 1939.

Coe & McLane and John Lewis Reese, all of Pensacola, Fla., for libellant.

Yonge, Beggs & Carter, of Pensacola, Fla., for respondent and claimant.

LONG, District Judge.

This cause is before the Court on final hearing upon the libel of John Wesley Heyer, the answer of Reardon Smith Line, Ltd., claimant, and the testimony taken before the Commissioner and before the Court, and having been argued and submitted by the proctors for the respective parties, and due deliberation having been had, the Court now finds as follows:

The steamship "Prince Rupert City" arrived at the Port of Pensacola, Florida, on May 15, 1939, for cargo of scrap iron, and immediately longshoremen were engaged in loading scrap railroad iron rails from ten to thirty-five feet in length in hold number five of said vessel. The Pate Stevedore Company was the stevedoring contractor employed to load said vessel and the libellant was one of the longshoremen engaged by the said Pate Stevedore Company as a workman to assist in such loading. As such workman he had labored in the hold from May 15, 1939, to the afternoon of May 17, 1939, when he undertook to climb out of the hold upon a steel ladder fastened to the ship and leading to the deck, at five o'clock in the afternoon. In so ascending he grasped one of the rungs of the ladder which, it seemed broke off at both ends causing him to fall backwards which resulted in the injury complained of. He fell approximately eighteen feet and landed on top of the shaft tunnel at the bottom of the hold.

It is the contention of libellant that the ladder was unseaworthy; that the rung which gave way and caused his fall had become broken loose at one end (the right hand end), and that claimant had failed and neglected to repair the same, although (it was alleged) said defect was discoverable upon reasonable inspection; and further, that the rung presented the appearance of being substantial and fastened at both ends; that libellant relied thereon assuming it to be solid, and having already broken loose on the right hand end the other end was insufficient to bear his weight.

The claimant in its answer denies the allegations of the libel to the effect that it or those in charge of the vessel failed and neglected to maintain the ladder in a safe and seaworthy condition, and that it had long permitted the rung to be broken loose at one end, and that the defect, if any, was discoverable upon reasonable inspection, and alleged in substance that if any defect existed in the ladder it was hidden and not known to it and could not have been discovered by the exercise of reasonable diligence and care nor by reasonable inspection. There are additional allegations in the answer setting up the facts that the ladder was in fact damaged by the stevedore in the process of loading by being struck by a rail; that the dangers of such loading was openly visible and apparent to the libellant, and that the damage to the ladder was caused by co-laborers working with the libellant, by reason of which claimant contends libellant assumed the risk of injury from acts incidental to the loading as well as those of a fellow servant. The answer also sets up contributory negligence.

To maintain libellant's contention that the ladder had already become broken loose at one end he relies upon a theory that the rung in question had been broken or fractured long prior to the accident, and that by constant use it gradually became weaker until the time of the accident when it gave way. There is no positive proof that this condition existed. On the other hand, the evidence conclusively shows that the ship left the river Tyne in England on April 22, 1939, and came directly to the port of Pensacola; that just prior to her leaving England, for fourteen days she was in dock undergoing repairs, and all the necessary surveys were carried out; that the survey made just prior to her departure was made by the British Corporation Survey, and inspection and surveys completed; that this steel ladder composed of rungs leading from the hold to the deck was used continuously during the voyage by officers and members of the crew of the ship, and nothing was reported to be wrong with it; that when loading was begun in Pensacola on Monday May 15, the longshoremen used it

four times on Monday, and four times on Tuesday; that they descended it at about eight o'clock Wednesday morning, came up at noon, went back into the hold by the same ladder at one o'clock, and the libellant was the first laborer to undertake to ascend to the deck by way of this ladder at five o'clock in the afternoon after completing his days work when the accident occurred; that on the morning of May 17, the first officer of the ship went down into the hold upon this same ladder, made his inspection of the ladder, and found no apparent defects, nor anything wrong with it.

██ It is, of course, the duty of those in charge of vessels to provide suitable and safe equipment for the use of stevedores employed for the purpose of loading the vessel, but owners of ships or those in charge are not liable for injuries to stevedores where the defect in the ladder causing the fall was caused during the loading of the ship, and the owners had no notice of the defect, as vessel officers are not charged with the duty of constant inspection of appliances furnished stevedores. Weldon v. United States, D.C., 9 F.Supp. 347.

"If what was initially furnished was reasonably safe and adequate, and became defective through use while in charge of the stevedores, it was necessary for knowledge of that fact to be brought home to the officers of the ship before any duty of replacement arose." Bryant v. Vestland, 5 Cir., 52 F.2d 1078, 1079.

The preponderance of the evidence is in favor of the claimant. It clearly shows that in loading the vessel these railroad rails were longer than the hatches of the ship; that they were loaded by double chain slings on a bridle hooked on to the ship's gear, lifted out of the trucks and lowered into the hatch; that because of the length of the rails they pounded around in the hatch striking anything that they came in contact with on the way down; that in addition to the defective rung complained of in hold number five, it further appears that in number two hatch two ladder rungs were fractured similar to the rung in question; in number four hatch two ladder rungs were fractured; in number four hatch two safety hand rails at the corner of the hatch to stop people from falling down were broken; a steam pressure pipe was broken by these rails; the engine room door was smashed in; two

glass ports in the saloon about three feet away from any hatch were broken by rails penetrating through them into the housing, and other damage done.

While there arises some controversy in the evidence as to the condition of the rung and the ends burned from the coaming, the greater weight of the testimony shows that both ends of the rung were broken at the same time. And, even though the right hand end had already been broken loose as contended by libellant, the left hand end according to the evidence, in the opinion of expert witnesses, was sufficient of itself to bear the weight of as many as three men of normal size and weight. There was evidence to the effect that the rung could have been hit with a rail with a force sufficient to break it without leaving a scar on it.

██ In order for the ship to be held liable in this case, it is a duty incumbent upon the libellant to prove by a preponderance of the evidence both that the claimant was negligent and that this negligence was the proximate cause of the injury. If the evidence leaves the matter of proximate cause in doubt, there can be no recovery. The Aden Maru, D.C., 51 F.2d 599.

██ The theory of libellant is not supported by proof, and the evidence does not measure up to the rule that would support a decree for the libellant.

██ As to the question of notice, it appears from the evidence that none of the ship's officers nor its crew, nor the stevedore nor any of his laborers, including the libellant, had notice that this rung was in any way defective. The ship had been thoroughly surveyed and inspected by the British authorities just prior to her departure from the Tyne; had been used during the entire voyage by officers and members of the crew; had been inspected and especially examined for fractures by the chief officer on the morning of May 17, 1939, the date upon which the accident occurred; had been used by the workmen since the date of the ship's arrival at Pensacola on May 15, 1939, when loading was begun, and no defect was apparent. There could be no liability on the part of the ship's owner, for the law is well settled that it is not the duty of the owner to continually inspect the appliances used while the loading is taking place. See Weldon v. United States; Bryant v. Vestland; supra.

In as much as the laborers used this ladder at 1:00 p. m. on the day of the accident and nothing then appeared to be wrong with it, it would seem the rung must have broken between 1:00 and 5:00 p. m. the day of the accident, and the Court feels that the short time which elapsed is not sufficient to impute knowledge to the claimant of any defect in the ladder. In Bryant v. Vestland, supra, it was expressly held that notice of a defect occurring during the loading must be brought home to the steamship in order to impress it with liability.

The answer raises the defense of assumption of risk and acts of fellow servants. The doctrine of assumption of risk in admiralty has been applied in this circuit. Gaderson v. Texas Contracting Co., 5 Cir., 3 F.2d 140. Also the fellow servant rule, as to injuries on vessels. Pacific Mail S. S. Co. v. Beneby, 5 Cir., 250 F. 444.

Libellant's proctors did not question libellant's inability to recover in the event the stevedore's employees broke the ladder.

The Court is of the further opinion that the evidence supports the theory that the stevedore did in fact break the ladder in the process of loading and that the defenses of assumption of risk and acts of fellow servants are well founded, and fully supported by the evidence, and these defenses of themselves under the circumstances of this case are sufficient to bar recovery.

It is, therefore, the opinion of the Court that a decree should be entered for the claimant dismissing the libel.