NAVIGAZIONE ALTA ITALIA, OF TURIN, ITALY, et al. v. VALE.

(Circuit Court of Appeals, Fifth Circuit.   March 8, 1915.)

No. 2698.

1. SHIPPING ⬤➡84—INJURIES TO SERVANT—INDEPENDENT CONTRACTORS.

Where the owners of a vessel engaged a contracting stevedore to load its cargo of cotton at so much per bale, and the stevedore employed a foreman, who picked his own crew, there was no privity of contract between the foreman and the owners of the vessel, which rendered the latter liable as masters for injuries to the foreman.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. ⬤➡84.

Who are independent contractors, see note to Atlantic Transport Co. v. Coneys, 28 C. C. A. 392.]

2. SHIPPING ⬤➡84—LIABILITY OF VESSELS—INJURIES TO STEVEDORE—DEFECTIVE APPLIANCE.

Where a foreman, employed by a contracting stevedore to load a vessel, was injured by the breaking of a rope sling furnished by the vessel for the work, the owner was liable if the rope, when furnished, was not reasonably suitable for the purpose, but was not liable if the defective condition of the rope arose during the progress of the work.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. ⬤➡84.]

3. SHIPPING ⬤➡86—LIABILITY OF VESSELS—INJURIES TO STEVEDORE—EVIDENCE.

On a libel by a foreman, employed by a contracting stevedore, who was injured by the breaking of a rope furnished by the vessel, evidence that at the time the rope broke, after it had been used for several days in loading the vessel, it appeared old and defective, was not evidence that it was defective when it was furnished, since the character of use was such that it might have become worn after it was furnished.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 343, 353–360; Dec. Dig. ⬤➡86.]

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Libel by James Patrick Vale against the Navigazione Alta Italia, of Turin, Italy, and others. Decree for libelant, and claimants appeal. Reversed, and libel dismissed.

James C. Henriques, of New Orleans, La., for appellants.

J. L. Warren Woodville and John Alonzo Woodville, both of New Orleans, La., for appellee.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

WALKER, Circuit Judge.   The injury to the libelant, who at the time he was hurt was acting as the foreman of a gang of screwmen engaged in loading cotton upon the steamship Ill Pie Monte, was due

to the breaking of a rope sling used in hoisting the cotton from the wharf and lowering it into the hold of the vessel; a result of the breaking of the rope being that the hook tackle to which it was attached flew up and struck the libelant. The libel charges that it was the duty of the ship to furnish the proper tackle and apparatus to stow its cargo, and that it was grossly negligent in furnishing a sling not sufficiently strong to bear the weight of the two bales of cotton which were being lowered into the hold when the sling broke.

The contract for the loading of the cotton was made by the ship's agent with John B. Honor & Co., who were contracting stevedores. The manner in which the work of loading was done was not controlled by the ship, its officers, or agents, and the men engaged in the work were not subject to their orders or directions. The contract for loading the cotton was made with the stevedores, in accordance with the terms of a written agreement which had been entered into by and between the steamship agents, the contracting stevedores, and the labor organizations of the screwmen of the port of New Orleans, of one of which organizations the libelant was a member. Under that arrangement the ship's agent engages a contracting stevedore to load or unload a cargo, or a part of it (when cotton is to be loaded agreeing to pay so much a bale for loading it), the ship furnishes the rope, tackle, and other appliances required for the work, the stevedore gets the work done by employing for the purpose one or more foremen or "toters" of gangs of screwmen, each of these foremen having the selection of the members of his organization who are to work with and under him (in the case of loading cotton the stevedore paying the foreman according to the number of bales loaded by his gang), and the foreman settles with the other screwmen, who, with himself, make up his gang. If, while the work is in progress, the rope slings which have been furnished to the foreman of a gang wear out or break, on the application of the foreman other slings are furnished to him by an officer of the ship. When work on a job is suspended before it is completed, the slings are left in the hatch where they have been in use, remaining there for further use of the gang until the job is finished. It is not uncommon for slings to wear out or break while the work of loading is going on. Nor is it uncommon for the same slings to be furnished and used which were used in loading the vessel when it was in the port at a former time and was taking on cargo for a previous voyage. At the time the rope in question broke the loading of the cotton had been in progress several days.

[1, 2] It is manifest that the stevedores who contracted to load the cotton were independent contractors, that there was no privity of contract between the owners of the vessel and the libelant, and that if any liability was incurred by the former to the latter it was not that of a master to his servant. The Dago (C. C.) 31 Fed. 574; Roymann v. Brown et al., 105 Fed. 250, 44 C. C. A. 464. It may be assumed or admitted that, on the ground that the laborers employed by or under the stevedores were impliedly invited to use the rope on the premises of the owner of it in loading the cotton on the vessel, a liability was incurred by the ship or its owner, if the latter was negligent in furnish-

ing a rope which, when it was furnished, was not reasonably safe and suitable for the use to which it was to be put.  Huset v. J. I. Case Threshing Mach. Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303; Bright v. Barnett & Record Co., 88 Wis. 299, 60 N. W. 418, 26 L. R. A. 524; Hayes v. Philadelphia, etc., Coal & Iron Co., 150 Mass. 457, 23 N. E. 225.  If a duty owing by the vessel or its owner to the libelant was breached, this occurred when the rope was furnished for the libelant's use.  To show that such a liability was incurred requires evidence having a tendency to prove that the rope at the time it was furnished was unfit for the use that was to be made of it.  The owner of the rope is not to be held responsible for its insufficiency, resulting from what may have happened to it after it ceased to be in its custody or under its control.

[3]  There was no evidence as to the condition of the rope, except that which showed the circumstances of its breaking and that to the effect that at that time it did not have the color or appearance of a new rope.  There was evidence of the fact, which is a matter of common knowledge, that such ropes as the slings used in loading the cotton were shown to have been made of wear out from such uses as they were put to.  The rope in question broke while it was being used in the customary way, and the two bales of cotton it was carrying at the time were not of greater weight than that of the load ordinarily carried.  The breaking of the rope in such circumstances is evidence that it was defective at the time it broke, but is not evidence that it was defective when it was furnished before the loading of the vessel commenced.  It may well be that it was abundantly sufficient then, perfectly safe to be used in hoisting cotton onto, and lowering it into the hold of, the vessel, but became discolored and defective as a result of the wear and tear to which it had been subjected after the loading began.

Evidence of the insufficiency of such a perishable article after it had been subjected to a kind of use which may be expected to cause a deterioration of its condition does not logically or reasonably tend to prove that the defect or insufficiency then disclosed existed before it was subjected to such a use, especially when, so far as the evidence discloses, there was no indication or manifestation of its faulty condition during the considerable period of its prior use in the kind of service which causes it to wear out.  In the absence of evidence having a reasonable tendency to prove that such was the fact, it is not to be presumed that the condition of the rope in question was substantially the same at the time it broke as it was before it was subjected to the wear and tear incident to its use in loading a considerable part of a cargo of cotton.  Evidence of its breaking under the circumstances disclosed did not tend to prove that it was defective when it was furnished by the ship or one of its officers or agents.  Albany & Rensselaer Co. v. Lundberg, 121 U. S. 451, 7 Sup. Ct. 958, 30 L. Ed. 982; Ferraris v. Kyle, 19 Nev. 435, 14 Pac. 529; Lewy Art Co. v. Agricola, 169 Ala. 60, 53 South. 145; Eureka Coal Co. v. Braidwood et al., 72 Ill. 625.

We do not find in the record any evidence to support the conclusion that at the time the rope was furnished by or for the ship it was unfit or unsafe for the use to which it was to be put. In the absence of such evidence the libelant was not entitled to recover. It would be pure surmise or conjecture, unsupported by evidence, to conclude that the rope was defective when it was furnished, rather than that the defect which caused it to break resulted from the use made of it after it passed out of the custody or control of the ship or of any one representing it.

It follows that the decree appealed from must be reversed, and one dismissing the libel will be here entered.