LOUISA LIVERANI, as Administratrix of the Estate of ORRESTE LIVERANI, Deceased, Respondent, *v.* JOHN T. CLARK & SON, Appellant, Impleaded with Others.

**Master and servant — negligence — death of employee of firm engaged in loading steamship caused by defective apparatus belonging to ship and used by his employer — duty of inspection — right of firm using apparatus to rely upon ship owner performing its duty of inspecting apparatus to see if it was safe — erroneous charge — erroneous refusal to charge as requested by defendant.**

A stevedoring firm, engaged in loading sugar into a steamship, was using hoisting falls hooked into an iron ring-bolt fastened in the ship's deck for that purpose. During the progress of the work, the

ring-bolt broke at, or a little below, the surface of the deck and the pulley block fell and struck an employee of the firm, causing his death. In an action brought by the legal representative of the decedent, a judgment, rendered upon the verdict of a jury, was entered against the firm for which decedent was working and the company owning the steamship. There was some evidence that the wood of the deck around the hole, through which the shank of the ring-bolt passed, was black or discolored by rust and that the ring-bolt itself was badly rusted, and an expert gave it as his opinion that, under a hammer test, a crack or defect in the shank of the ring-bolt near the surface of the deck could have been detected. From this judgment, affirmed by the Appellate Division, the stevedoring firm appeal to this court. The trial court charged in substance that the appellant could not rely upon the steamship company performing its duty of inspection of the appliances which the appellant used in its work of loading the vessel, but was bound to inspect them itself but did not explain what the inspection should be. Appellant thereupon asked the court to charge in substance: That, if the jury found that the ring-bolt was furnished by the ship for appellant's use, the appellant had the right to rely upon the ship having performed its duty in respect to the inspection and care of the ring-bolt and that, in the absence of something about the visible part thereof to put the appellant on its guard as to its being in a dangerous condition, there was no duty on its part to apply the hammer test to determine its condition below the deck. The trial court declined to so charge and its decision was affirmed by the Appellate Division. *Held*, error, and that the judgments of both courts should be reversed.

*Liverani* v. *Clark & Son*, 191 App. Div. 337, reversed.

(Argued April 26, 1921; decided May 3, 1921.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 14, 1920, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

*Walter L. Glenney* and *Bertrand L. Pettigrew* for appellant. The appellant was entitled to assume that the defendant steamship company had performed the duty of inspecting the ring-bolt which broke, and was not required to make further inspection in the absence of

anything to excite suspicion or apprehension. (*McKeon* v. *P. & G. Mfg. Co.*, 154 App. Div. 740; *Kirk* v. *Sturdy*, 187 Mass. 87.) Reversible error was committed in charging the jury that the appellant could not rely upon the defendant steamship company performing its duty of inspection of an appliance to be used in the performance of its business, and in refusing to charge as requested. (*Kirk* v. *Sturdy*, 187 Mass. 87; *O'Doherty* v. *Postal Tel. Cable Co.*, 134 App. Div. 298; *Moynihan* v. *Kings' Windsor C. D. Mortar Co.*, 168 Mass. 450; *McMullen* v. *City of New York*, 110 App. Div. 117; *Poole* v. *American Linseed Co.*, 119 App. Div. 136.)

*Alvin C. Cass* for respondent. The request to charge was without merit. (*Friedman* v. *Met. St. Ry. Co.*, 89 App. Div. 486; *Lawson* v. *Met. St. R. Co.*, 40 App. Div. 307; 166 N. Y. 589; *Pettersen* v. *Rahtjen*, 127 App. Div. 34; *Link* v. *Selden*, 136 N. Y. 1; *Fullerton* v. *Met. St. R. Co.*, 170 N. Y. 592; *Frank* v. *Met. St. Ry. Co.*, 171 N. Y. 666; *Buckley* v. *Westchester Ry. Co.*, 183 N. Y. 503; *Powell* v. *Cohoes Ry. Co.*, 136 App. Div. 204.)

CRANE, J. John T. Clark & Son, the appellant corporation, was a contracting stevedore engaged in loading bags of sugar into the steamship *Sarnia* moored at the foot of Court street, borough of Brooklyn, city of New York, on the twenty-first day of June, 1916. The hoisting falls were hooked into an iron ring-bolt fastened in the ship's deck. The ring was made of one-inch metal with a stem extending through two decks and clinched with a rivet underneath. During the progress of the work the ring-bolt on the deck of the vessel broke at or a little below the surface of the deck and the pulley block struck Orreste Liverani in the back, causing his death. The deceased was an employee of John T. Clark & Son and engaged in loading the cargo. Judgment has been entered upon the verdict of a jury against the employer

and the Bay Steamship Company of America, Ltd., the owner of the vessel, for the damages sustained by the next of kin, the basis of the recovery being the negligence of the two defendants. The employer, John T. Clark & Son, appeals to this court from the unanimous affirmance of the judgment.

The point raised by the appeal is the duty of inspection which by the charge of the court was placed upon the employer.

The ring-bolt, as before stated, was a part of the ship, a permanent structure to be used in such work as John T. Clark & Son was doing. The booms, pulleys, falls, guys and hooks necessary for loading the cargo belonged to the ship, the stevedore furnishing only the canvas slings for carrying the sugar bags.

Under such circumstances what was the duty which the law placed upon the stevedore with relation to the use of the ship and its parts? In the absence of any condition to excite suspicion or to suggest defects or danger, the stevedore might assume the safety of the appliances and that due care had been used by the ship-owner to keep and maintain them in reasonably safe condition. (*Kirk* v. *Sturdy*, 187 Mass. 87; *O'Doherty* v. *Postal Telegraph-Cable Company*, 134 App. Div. 298.) This does not mean that the stevedore could use the tackle or the ship's parts blindly and without looking at them, but that if appearances indicated no danger or defects, an inspection by tests for latent imperfections was not required of it. To expect a stevedore in the absence of these indications to minutely examine masts, booms and bolts and apply to them expert scrutiny before permitting his servants to use them would be unreasonable. This rule has been recognized in this case by counsel for the respondent and it is claimed by him that the condition of the ring-bolt was such as to give notice of defects to the stevedore requiring further examination than was made by it. There is evidence that the ring-bolt

was badly rusted, that the deck around the ring-bolt was old and marked with iron rust, and an expert gave it as his opinion that under the hammer test the crack or defect in the shank of the ring-bolt near the surface of the deck could have been detected. This being the condition and the evidence, we now turn to the charge of the court.

" I charge you, as the law in this case," said the learned trial justice, " that Clark & Son cannot rest upon the steamship company performing its duty of inspection of an appliance which Clark & Son were going to use in the performance of their business. * * . * The duty of the master to inspect the materials or the machinery and appliances used by his servants in the course of his business extends not only to those things which are his property or furnished by him, but equally also to all things which it becomes the duty of his servants to use in the course of their employment. * * * I am bound under the law to inspect and examine these things to determine or discover if I can defects in them, and to repair such defects or avoid their use if reasonable care required that. Reasonable care in a case of this kind always involves reasonable inspection. It involves proper inspection."

Up to this point the court did not explain what this inspection would consist of, whether it would be a look at the ring-bolt to see if it appeared safe or whether it would be the hammer test, suggested by the expert, which would reveal latent defects. A request was thereupon made which reads as follows:

" I ask your Honor to charge the jury that if they find that this ring-bolt was furnished by the ship for the use which was being made of it at the time of this accident, that the defendant Clark & Son had a right to rely upon the ship having performed its duty in respect to inspection and care of that ring-bolt, and that in the absence of something about the visible part

of the ring-bolt to put Clark & Son on their guard, as to its being in a dangerous condition, that there was no duty on the part of Clark & Son to apply the hammer test to the bolt to determine its condition below the deck."

The court declined to charge other than it had already charged on that subject.

The request was a correct and accurate statement of the law. The court had not previously stated anything about the hammer test or the nature of the reasonable inspection required of the defendant. The charge, as will be seen by the above quotations, frequently referred to inspection which might have meant inspection for appearances or the more careful inspection to be made by tests. The request met the omission or the situation by asking the court to tell the jury that the more critical examination of the hammer test to reveal defects was not required by the law of the defendant unless appearances upon a casual inspection indicated danger or weakness. In our judgment this request should have been charged. The Appellate Division has met this apparent error with the suggestion that the request did not embody all the evidence, that it confined the indication of weakness to the visible part of the ring-bolt, whereas the rust about the deck should also have been considered. In its opinion, the Appellate Division says:

" The court properly declined the quoted request about applying the hammer test. It limited such test to something about the bolt, thus ignoring the surrounding wood; and as the evidence pointed to a break at the deck, or just below it, the request recurred to the idea of appellant's witness that the break was at the bottom of the bolt. The request was also prefaced by an erroneous statement that the appellant had a right to rely upon the ship having performed its duty in respect to care and inspection, a ruling which had been previously asked and properly denied."

[231 N. Y. 178]    Opinion, per CRANE, J.    [May,

The request, we think, fairly states the law as applicable to this case. " In the absence of something about the visible part of the ring-bolt to put Clark & Son on their guard, as to its being in a dangerous condition," the stevedore was not obliged to apply the hammer test. The words " the visible part of the ring-bolt," as used in this connection, would include the deck around the hole through which the shank passed. This had been the evidence in the case. Testimony had been given of the rusty condition of the shank, ring and the deck at the hole through which the shank passed. The questions and answers are as follows:

" Q. Describe how it looked, the hole where you looked at it.

" A. The wood was all black. It was eaten up by rust.

" Q. At the time that you saw this hole after the accident, how much larger was the hole than the rod, the shank of the eye-bolt?

" A. I did not measure it. I should not consider it was but very little larger.

" Q. Did you observe that the wood was discolored with iron rust?

" A. A little but not much."

The wood which was rusty or discolored was, therefore, at the hole of the deck through which the shank or ring-bolt passed and the rust on the ring-bolt, shank and deck at the hole was treated as one for the purpose of indicating or giving notice to the stevedore that the shank-pin or ring-bolt was insecure. When, therefore, the request referred to the visible part of the ring-bolt, it could reasonably have been understood as meaning not only the ring but the shank, the hole and the deck about the hole. In other words, the request might readily have been understood by the jury as referring to the appearances on or about the ring-bolt which would indicate that something was out of order or in a defective

condition. No distinction had been made in any part of the case between the ring-bolt and the deck or the rust on the ring-bolt and the deck. No such distinction was made in the charge of the court and when reference was made to the appearance of the ring-bolt, the visible part of the ring-bolt which meant that part which the eye could see in glancing at it, it is reasonable to suppose that reference was made to any visible indication on or about the ring-bolt. To hold that the request was improper because it did not include in the things that could be seen or might indicate danger, the rusty deck as well as the rusty ring-bolt is, in view of all that had been said and of the conditions, too narrow a construction to place upon the words of the trial counsel.

If the request had been that the hammer test was not required unless the visible part of the ring-bolt and the deck about the ring-bolt put Clark & Son on their guard as to its being in a dangerous condition, it would have been perhaps more accurate and concededly correct. We think that the jury might well have believed that this was the meaning of the request as made.

The judgments, therefore, should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., CHASE, HOGAN, CARDOZO, McLAUGH-LIN and ANDREWS, JJ., concur.

Judgments reversed, etc.