**FAUNTLEROY v. ARGONAUT S. S. LINE, Inc., et al.**

**THE PACIFIC.**

Circuit Court of Appeals, Fourth Circuit. June 12, 1928.

No. 2707.

1. **Shipping** ⊛86(2⅔)—**Res ipsa doctrine held applicable to injury sustained by winchman loading ship, resulting from fall of barrel of iron turnbuckle from aloft.**

In libel by winchman employed in loading ship lying at dock to recover for injuries sustained by fall of barrel of iron turnbuckle from aloft, doctrine of res ipsa was applicable, in view of reasonable certainty that injury would not have happened had proper precautions been taken by ship's officers.

2. **Shipping** ⊛84(3½)—**Vessel must furnish loading tackle free from defects.**

Vessel had duty of furnishing loading tackle, for use in loading ship, which was free from defects.

3. **Shipping** ⊛84(3½)—**Ship's duty to reasonably safeguard after lowering boom held not discharged by showing inspection before such time.**

Vessel's obligation to see that all reasonable safeguards were taken after lowering of boom to secure turnbuckle to cross-trees of mast *held* not discharged by showing inspection before boom was lowered away, after disclosing a condition subsequently changed.

4. **Shipping** ⊛84(5)—**Winchman and stevedore had right to assume ship's tackle was free from defects not observable in exercise of ordinary care.**

Winchman engaged in loading ship, and his employer, the stevedore, had right to assume that ship's tackle was free from any defects not observable in exercise of ordinary care.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; William C. Coleman, Judge.

Libel by Griffin Fauntleroy against the steamship Pacific, claimed by the Argonaut Steamship Line, Inc., and the Atlantic Coast Shipping Company, Inc. Decree for respondents (23 F.[2d] 218), and libelant appeals. Affirmed as to respondent last named, and as to claimant reversed and remanded, with directions.

George T. Mister, of Baltimore, Md., for appellant.

Frank B. Ober, of Baltimore, Md. (Janney, Ober, Slingluff & Williams and Robert Stinson, all of Baltimore, Md., on the brief), for appellee Argonaut S. S. Line, Inc.

L. Vernon Miller and Fendall Marbury, both of Baltimore, Md. (William L. Marbury, of Baltimore, Md., on the brief), for appellee Atlantic Coast Shipping Co., Inc.

Before PARKER and NORTHCOTT, Circuit Judges, and GRONER, District Judge.

GRONER, District Judge. Libelant was a winchman employed by the Shipping Company to load the steamship Pacific, then lying at a local dock in Baltimore harbor. The loading was begun on Monday, and he sustained an injury on the following Saturday, while working the winch at No. 2 hatch, by the fall of the barrel of an iron turnbuckle from aloft. The turnbuckle consisted of a barrel with right and left hand screws and two eye bolts, one in the cross-tree and one in the head of the Samson or heavy derrick boom. It was one of a pair used to fasten this boom to the cross-tree on the mast some 40 feet above the deck. The barrel was 12 or 14 inches long and about 2 inches in diameter. It had a hole through its middle, into which a rope could be passed to lash it to the mast. The Samson boom was longer and heavier than the regular cargo booms, and was only used in heavy cargo lifts. When at sea, the boom was secured fast against the mast. When about to be used, it was slacked off from the mast and lowered to the position required for operation.

During the week preceding the accident, the ship's smaller cargo booms had been used, but it was intended to use the Samson boom the day succeeding the accident, and this was done. There was evidence on behalf of the vessel that the lashings of the turnbuckles of the Samson boom had been inspected the day before the injury and found in order. The greater weight of the evidence, however, is to the effect that the Samson boom had at

some time prior to the accident been lowered by the ship's crew some 7 to 10 feet from the mast, leaving the turnbuckles hanging down from the cross-tree of the mast; the barrel that fell being screwed to the bolt fastened to the cross-tree.

[1] The District Judge was of the opinion that, since there was no evidence directly explanatory of the cause for the falling of the turnbuckle barrel, libelant had failed to discharge his obligation to prove some negligent act on the part of the ship or his employer, the stevedoring company, and that the res ipsa doctrine was not applicable. This we think was error as applied to the vessel, for, while it is true that as to libel- ant, an employee of an independent contrac- tor, the vessel was not required to do more than to exercise reasonable care to furnish him a reasonably safe place and reasonably safe appliances, and to inspect the same from time to time, circumstances taken as a whole unmistakably point to the conclusion that the fall of the turnbuckle barrel would not have occurred if these duties had been properly discharged. There is nothing in the case which to us supports the theory of inevitable accident, but, on the contrary, there is evi- dence from the ship's own witness, the mate, that the thing that happened might reason- ably have been anticipated if certain pre- cautions to avoid it, namely, the lashing of the barrel to prevent its turning, had been seasonably taken.

It is quite true that the boatswain testi- fied he made an inspection the day before the accident, and found everything in order; but it is apparent, if his testimony is ac- cepted, that he referred to a time previous to the lowering of the boom from the mast, for it is quite obvious that, if the condition in which he declared he found the fastenings had remained unchanged, the barrel could not have fallen, and it is equally obvious that, in the process of lowering the boom and unlashing the rope fastening, the barrel, from the vibration of the winches, might easily become unscrewed and fall, and this danger was peculiarly within the knowledge of the ship's officers, and imposed in itself the duty of frequent inspections to avoid just what did occur, and this necessitates the conclusion, either that the boatswain's state- ment as to his inspection the day preceding the accident is inaccurate, or else that the fastenings were later removed, and no fur- ther inspection made and nothing done to prevent the buckle turning and falling.

[2-4] It was the duty of the ship to furnish loading tackle free from defects. It was like- wise its duty to see that all reasonable safe- guards were taken after the lowering of the boom to safely secure the turnbuckle and its parts to the cross-trees of the mast. If this had been done, it would not have fallen, and libelant would not have sustained an in- jury, and we do not think that this obliga- tion is discharged by showing that, before the boom was lowered away from the mast, an inspection disclosed the screws in the bar- rel had been turned and the barrel lashed in the customary manner, for such evidence spoke of a condition which had been sub- sequently changed. Neither libelant nor his employer, the stevedore, were charged with any duty in respect to this part of the ship's tackle. Each had a right to assume that it was free from any defects not observable in the exercise of ordinary care. Whatever duty there was to fasten the turnbuckle, so that it would not fall, was imposed on the vessel.

In these circumstances, we think that the absence of explanation on these subjects to- gether with the reasonable certainty that the thing which happened would not have hap- pened, had proper precautions been taken, make applicable the doctrine rejected by the District Court. The decree of the lower court will therefore be affirmed as to the respond- ent the Atlantic Coast Shipping Company, Inc., and reversed as to the Argonaut Steam- ship Line, Inc., owner of the ship, and the case remanded to the lower court, with in- structions to allow libelant such damages as may be proper.

Affirmed as to the Atlantic Coast Ship- ping Co., Inc.

Reversed as to Argonaut Steamship Line, Inc.