### BRYANT v. VESTLAND.
### No. 6306.

Circuit Court of Appeals, Fifth Circuit.
Oct. 27, 1931.

Edgar J. Oliver, of Savannah, Ga., for appellant.

A. R. Lawton, Jr., of Savannah, Ga., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, the widow of Robert Bryant and administratrix of his estate, filed a libel in personam against appellees, owners of the steamship Polarland, to recover damages for his death, alleged to have been caused by the negligence and breach of duty of the vessel in failing to furnish safe and adequate appliances to be used in unloading a cargo of sugar from her in the port of Savannah, Ga. The District Court found against the contentions of appellant and entered judgment in favor of appellees dismissing the libel.

The rule is well settled. It was the duty of the officers of the vessel to use reasonable care to furnish the stevedores with reasonably safe appliances to work with. However, they were not charged with the duty of constant inspection of the appliances furnished. If what was initially furnished was reasonably safe and adequate and became defective through use while in charge of the stevedores, it was necessary for knowledge of that fact to be brought home to the officers of the ship before any duty of replacement arose. Luckenbach S. S. Co. v. Buzynski (C. C. A.) 19 F.(2d) 871; Navigazione Alta Italia v. Vale (C. C. A.) 221 F. 413.

It is not necessary to review all the evidence in the record. The deceased was a longshoreman employed by Smith and Kelly, independent contracting stevedores, who were engaged by the consignees of the cargo and were paid by the ship. The officers of the ship had no control over the manner of doing the work but, of course, had authority to stop it in the event they believed the method used was dangerous or might cause damage to the vessel. Other than this they had no control whatever over the stevedores. The work of unloading began about 2 p. m. on March 7, 1929, and was completed about 4:30 p. m. on March 8. The accident occurred about 2 or 3 o'clock on March 8, and was caused by the breaking of a sling used in raising seven bags of sugar, weighing approximately one ton, out of the No. 1 hold. Before the work started, the ship furnished the stevedores with eight slings for each hatch. This was the usual number required. The slings were all made of new manila rope, three inches in circumference, with the ends spliced together to form a continuous loop. These slings were of size and strength habitually used for unloading sugar at Savannah, and were considered perfectly safe by all parties. So far there is no material conflict in the testimony.

The gang in each hold was composed of four men, three loading the slings and one, called the header, standing on deck to see that the load was safely guided on to the dock. Tom Brown, the header at hold No. 1, in which Bryant was working, testified that shortly before the accident he asked the second mate of the vessel for new slings; that the mate told him the slings were all right and gave him one sling, which he did not use, as it was too short and wet. He did not complain to the foreman in charge of the work that he considered that the slings were dangerous, but continued to use them. However, he warned the men working in the hold to keep out from under the load while it was being raised. There was room under the deck for them to remain in safety while the load was being hoisted, but Bryant did not heed the warning. He was working directly under the load, arranging another sling, when it fell. There was also testimony tending to show that the men were experienced and would not use a sling considered dangerous, and that, until it parted and exposed the raw ends, there was nothing to indicate that the sling which broke was so chafed or strained that it was dangerous to use. Abeltoft, the second officer of the vessel, testified that Brown asked him for only one sling, which he furnished, and made no complaint as to the others. The District Court heard the testimony of Brown in open court.

It could not be questioned that the vessel furnished adequate slings before the work of unloading started and they were safe and proper for doing it. No doubt the sling that broke had become defective, though in use only one day, but a preponderance of the evidence, considering all the facts and circumstances, clearly shows that the officers of the ship had no notice of its defective condition. The duty to replace the defective sling had not arisen. We agree with the conclusion reached by the District Court.

Affirmed.