**IARIA v. SILVER LINE, Limited.**

District Court, S. D. New York.

Dec. 17, 1943.

Jacob Rassner, of New York City, for libelant.

Lord, Day & Lord, of New York City, (William J. Brennan, of New York City, of counsel), for respondent.

MANDELBAUM, District Judge.

This is an action in admiralty tried by the court without a jury. The libelant sues to recover from the respondent, Silver Lines, Ltd., for personal injuries incurred by reason of an alleged accident aboard the m/v "Silverelm", owned, operated and maintained by the respondent. The libelant at the time of said accident was in the employ of the contract stevedores, who were independent contractors, engaged to discharge the vessel's cargo.

It is alleged by the libelant that when the employees of the contract stevedores began working on September 5, 1942, on the respondent's vessel, the winchman discovered that the steam controlled winch was defective. That the defect was called to the attention of the vessel's third officer, who, in turn, sent the oiler to repair the winch. The oiler repaired the winch by tying two pieces of wood onto the shaft to hold the gears in place. That said repairs were made in an unseamanlike manner and created a risk not assumed by employees in the ordinary course of employment. That even though the winch thereafter functioned, the winchman complained to the oiler of the unsafe and needlessly hazardous condition. The libelant claimed that on the afternoon of September 6, 1942, the two pieces of wood fell out, the gears became disconnected and the winch no longer remained subject to the steam controlled device. That as a result, the winchman was unable to check the falling hook and cable. That said hook suddenly descended into hold No. 4, where the libelant was working as a stevedore discharging the cargo of said vessel, striking him across the right side of the head and causing the injury of which he complains.

The pleadings and the evidence submitted at the trial show, and the respondent does not deny, that the libelant met with this accident on board the vessel on September 6, 1942, but allege: That no negligent act on the part of the respondent in any way caused the accident; that the employees of the contract stevedores were supplied with a safe place to work and safe machinery with which to work; that accidents of this type are inherent in the nature of the employment and as such are assumed by the employees as ordinary risks of the employment. That the cause of the accident was not a defective winch, but a negligent winchman, who was one of the libelant's fellow servants, and for whose negligent acts the respondent is neither responsible or liable.

The respondent further claims that the winch was in good condition; that when wooden strips are used, they are used as an additional safeguard. That it would be physically impossible for the accident to have occurred in the manner described by the libelant. To substantiate this contention, it submitted testimony of tests made on the same winch after it had been repaired.

From the testimony and depositions, I am persuaded that the libelant's version is the proper one. The libelant's eyewitnesses and the libelant himself all saw that the winch was broken. Sciplini, the winchman, who would naturally be most concerned about the winch, told the court that he spoke to the third officer. That the third officer sent the oiler to repair the winch. That the oiler repaired it by tying two pieces of wood on the gear shaft. Sciplini, Bolton, Cutrupi and Iaria all saw the oiler put the two pieces of wood on the winch. Sciplini states that thereafter, even though the winch did not function properly, it served its purpose until the two pieces of wood fell out and the machine refused to respond to the control device. Sciplini's observation stops with the hook rapidly descending into hold No. 4. Bolton, who was at the top of the tunnel, testified he saw the descending hook strike the libelant. Cutrupi, who was within four feet of the libelant when the accident happened, substantiates Bolton's testimony. The eyewitnesses clearly establish the manner in which the accident occurred, that there was a defective winch, and the negligent acts of the respondents. Their testimony stands uncontradicted.

The libelant asserts, through the testimony of Dr. Swetlow and Dr. Denker, that this injury caused a brain lesion, which, after the passage of about 30 days, resulted in the paralysis of the right side of libelant's body and other neurological complaints. That the libelant is permanently disabled as a result of this alleged accident.

Respondent, through its witness, Dr. Louria, denies that the present condition of the libelant is due to the injury of Sep-

tember 6, 1942. Dr. Louria's opinion is that the libelant's present condition is due to a cerebral thrombosis which is organic in origin.

The medical testimony on both sides shows that there is some conflict as to the origin of the libelant's present condition. From a practical aspect, Dr. Swetlow's testimony has the most solid foundation. He saw and treated the libelant thirty-five to forty times, the first of which was while the libelant's present condition was just becoming cognizable, the remainder after the present condition had set in. From the facts, and Dr. Swetlow's sole object was to divulge the facts as he had observed them, it is evident that the libelant's present condition was caused by the injury sustained on September 6, 1942. Dr. Swetlow was called in as a fact witness. He therefore was justified in refusing to render any opinion on the facts. Dr. Denker, a recognized expert in psychiatry, neurology and diseases of the nervous system, stated that his opinion, based on the history he had received, and the two examinations he had made, was that the libelant's present condition was caused by the injury sustained on September 6, 1942. Dr. Denker, while stating that the libelant was permanently disabled as to the type of work he had been doing, refused to state that the libelant was totally permanently disabled. Dr. Louria, who qualified as an expert in diagnosis, agreed with the eminent text writers referred to by Dr. Denker and conceded that the injury sustained by the libelant on September 6, 1942, could have been the competent producing cause of the libelant's present condition. The libelant's contention as to the origin of his present condition is supported by a preponderance of the evidence. The same evidence establishes the permanency but not the totality of the disability.

The respondent, in its pleadings and during the trial, urged the defense that the libelant had accepted compensation payments from his employer's carrier. That acceptance of such compensation under the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. 933 (a), constituted an election to accept compensation in lieu of suing a negligent third party. That as a result, the libelant should be precluded from bringing suit in this court. The respondent's contention that the acceptance of compensation precludes a third party suit was true until 1938, but has not been the law since 33 U.S.C.A. 933 (b) was amended in 1938 by Chap. 685, Sec. 12, 52 Stat. 1168. The act as amended requires that the compensation be accepted under an award in a compensation order filed by the deputy commissioner. The libelant here has never had a formal hearing or accepted compensation payments under a formal award by a deputy commissioner. The libelant's motion to dismiss this defense was accordingly granted. Toomey v. Waterman S. S. Corp. et al., 2d Cir., 123 F.2d 718.

That this is the intended construction of the Longshoremen's and Harbor Workers' Act, as amended in 1938, is borne out by the House Report 1945 for the 3rd Session of the 75th Congress, which states of the proposed amendment:

"The purpose of this amendment is to remove possible cause of complaint regarding the operation of the provision in subdivision (b) of Section 33 in making the mere acceptance of compensation work automatically an assignment to the employer of all rights of actions against the third party tort feasor. Acceptance of compensation without knowledge of the effect upon such rights may work grave injustice. The assignment of this right of action against the third party might properly be contingent upon the acceptance of compensation under an award in a compensation order issued by the deputy commissioner, thus giving opportunity to the injured person, or to the beneciaries in case of death, to consider the acceptance of compensation from the employer with the resulting loss of right to bring suit in damages against the third party, or a refusal of compensation so as to pursue the remedy against the third party alleged to be liable for the injury".

From the evidence, it appears that at the time of the accident, the libelant was a 59 year old longshoreman, with an average weekly salary of $30 per week. It is well known that in occupations involving manual labor, the earning capacity of an individual decreases as his age increases. I have therefore come to the conclusion that the libelant's salary during the remainder of his life would have averaged $25 per week. He, because of his injury, has suffered impairment to his earning capacity by 50%. According to the American Experience Mortality Tables, he has a life expectancy of 14.74 years. As a result of the respondent's negligence, he will suffer damages of 50% of an average salary of $25 per week for a period of 14.74 years. This amounts to an annual loss of $650. Capitalized at 2½% and allowing for ex-

haustion, the present value of the income is $7900. In order to arrive at his total damages, it is necessary to add the following item: Damages already incurred by way of lost earnings in the sum of $1600; pain and suffering to date valued at $1000; the pain and suffering he will incur in the future valued at $1000; medical expenses of $1000, thus making a total sum of $12,500.

The following are the court's findings:

### Findings of Fact.

1. The respondent supplied the employees of the contract stevedores with a defective steam controlled winch. That after being informed of the defect, respondent repaired the winch in an unseamanlike manner.

2. The accident was not that caused by a fellow servant but by the defective winch.

3. The defective winch and the unseamanlike repairs were the proximate causes of the accident.

4. The libelant's present condition is the effect of the injuries sustained as a result of respondent's negligent acts.

5. The libellant is suffering from a permanent partial disability.

6. The libelant did not accept compensation payments under an award of a deputy commissioner.

### Conclusions of Law.

1. The libelant did not accept compensation payments so as to preclude his bringing suit.

2. The respondent was negligent in not providing the libelant with a safe place to work.

Let a decree be entered for libelant in the sum of $12,500.