## GRASSO v. LORENTZEN, Director of Shipping, etc.

### No. 266.

Circuit Court of Appeals, Second Circuit.

April 9, 1945.

Jacob Rassner, of New York City, for libelant-appellant.

Haight, Griffin, Deming & Gardner, of New York City (Edgar R. Kraetzer and J. Ward O'Neill, both of New York City, of counsel), for respondent-appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This is an appeal from a decree of the District Court for the Southern District of New York dismissing on the merits a libel for personal injuries brought against the respondent as Director of Shipping and Curator for the Royal Norwegian Government.

From the facts as stipulated and as found by the court it appears that the libellant is a longshoreman who on May 15, 1942, was 42 years old and employed by Northern Dock Company, Inc., being engaged on that day in helping stow, on behalf of his employer who was under contract to perform that service, a cargo of crates containing army tanks on board the steamship Torvanger, which was berthed at State Pier in Brooklyn. The respondent, operating as a Norwegian Shipping and Trade Mission, owned and controlled the vessel.

The libellant's employer was insured with Travelers Insurance Company in compliance with the insurance provision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. When the libellant was hurt he was standing upon one of the crates being stowed in the hold under hatch No. 2 on the 'tween deck of the Torvanger. The longshoremen were then using a strap made of one-inch wire rope six feet long, which was looped around a gusset or bracing plate that ran at an angle from the side of the ship to the under frame of the deck. A cable from a winch on the upper deck passed through snatch blocks, including one that was held by this strap, and with it the longshoremen were drawing the crates into position in the hold. The strap was bent over the gusset plate, which was ⅝ of an inch wide at the top. The strap had been found there by the longshoremen and was used by them without inspection and without the knowledge and consent of the ship.

The judge found on adequate, though disputed, evidence that it was the established custom among longshoremen in New York Harbor to bring aboard their own equipment and that the "Northern Dock Company in accordance with the custom undertook to furnish its own straps for use of its employees on the S. S. Torvanger."

The libellant was severely injured while stowing the crates when the strap broke and the snatch block which it had held struck him on the back.

On May 29 a report of the accident, signed by his employer, was forwarded by the insurance company to the Deputy Commissioner of the United States Employees' Compensation Commission in New York, advising that it had begun on that day to make payments of compensation without awaiting an award under the Act, and no such award was ever made. Thereafter payments were continued at the rate of $20 per week until a total of $354.29 had been paid by the insurance company. The latter than advised the Deputy Commissioner that it had stopped payments because the libellant was required to establish the continuance of his disability. On November 25 he was examined and a report of this examination was subsequently forwarded to the commission. All this time the negotiations in its behalf were carried on by a claims examiner in the office of the Deputy Commissioner.

On December 4 a claims examiner wrote the libellant and the insurer to request a conference on December 17, but on the fifteenth the libellant's proctor wrote to the commission advising it that the libellant had decided to sue a third party and so would not attend the conference. On December 17 the libellant notified the commission of his election to sue a third party, and this suit followed.

The respondent pleaded the acceptance of compensation by the libellant as a defense to the action under the Longshoremen's and Harbor Workers' Compensation Act, supra, 33 U.S.C.A. § 933 (b), on the ground that such acceptance was an assignment to his employer of any cause of action he had against the respondent. This defense was overruled, and rightly so. Before the statute was amended in June 1938, acceptance of compensation was enough under § 933(b) to operate as an assignment to the employer of the employee's cause of action against a third party, and thereafter there could be no election under § 933(a) to sue rather than to receive compensation. Sciortino v. Dimon Steamship Corporation, D.C., 39 F.2d 210, affirmed 2 Cir., 44 F.2d 1019. But after the amendment the phrase "acceptance of compensation" in § 933(b) was modified by the words "under an award in a compensation order filed by the deputy commissioner." As a result of the amendment there must now be some official action by the Deputy Commissioner establishing an award of compensation in order to make such acceptance an assignment of the employee's

cause of action against a third party. Although the award may be informal, see Toomey v. Waterman Steamship Corporation, 2 Cir., 123 F.2d 718, it must amount to an award by the Deputy Commissioner. Sessa v. Weeks Stevedoring Co., D.C., 56 F.Supp. 50. The language and the legislative history of the amendment of 1938 show that it was intended to make the assignment effective only when compensation was accepted in accordance with such an award. See Report No. 1945 of the Judiciary Committee of the House of Representatives, 75th Congress, 3rd Session, dated March 14, 1938, and entitled "Amending the Longshoremen's and Harbor Workers' Compensation Act." See also Iaria v. Silver Line, D.C., 56 F.Supp. 42; Cupo v. Isthmian Steamship Co., D.C., 56 F.Supp. 45.

■■ However, we find no error in the judgment dismissing the bill of complaint on the merits. We will treat as the ship's property the strap which the stevedores found and used until it broke, as the court below treated it, though it does not appear how the strap got where it was and it may have been left there inadvertently by some other contracting stevedore, the ship's evidence being to the effect that it had no straps of its own. However that may be, the appellee's responsibility for the condition of the strap was certainly no more extensive than it would have been had it agreed to furnish straps and this had been one it actually furnished. Assuming, arguendo, that it was such a strap, the shipowner was bound to exercise reasonable care to make sure that when furnished it was in safe condition for the use to which it was to be put by the stevedores. Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082; De Luca v. Shepard S.S. Co., 2 Cir., 65 F.2d 566. The latter could rely on its being suitable, its appearance not showing the contrary, without inspection for hidden defects before use. See, Fauntleroy v. Argonaut S.S. Line, 4 Cir., 27 F.2d 50; Liverani v. John T. Clark & Son, 231 N.Y. 178, 131 N.E. 881.

■ But unless this strap was proved to be defective when the stevedores began to use it, the shipowner was not liable for injuries caused by its breaking. It was not under a duty to inspect and if necessary to repair or replace the strap after the stevedores began using it. Bryant v. Vestland, 5 Cir., 52 F.2d 1078; Navigazione Alta Italia v. Vale, 5 Cir., 221 F. 413.

■ The following findings of fact made by the trial court are based on substantial evidence:

"11. Straps used as was the one in question are quite likely to break, and it was the established custom to examine them from time to time while they were in use.

"12. It was the established custom and practice of Northern Dock Company to examine and inspect a strap before assigning it for use.

"13. No adequate inspection of the strap that broke was made before the longshoremen put it into use, and no adequate examination was made by them while it was in use.

"14. The accident occurred because the longshoremen put into use and continued in use, without adequate inspection, the strap that broke."

It was shown that these straps were subject to heavy wear and that they often broke in use. This particular strap was bent over the edge of the comparatively narrow gusset plate, and during two days before it broke had been withstanding strains put upon it while it was used in moving into position fifteen or sixteen crates each weighing from four to seven tons. Yet some strands of the wire rope out of which the strap was made were found, when one-half of it was examined after the accident, to be rusted through and brittle and weak for a distance of about six inches from the broken end. On this evidence it was for the trial court to determine whether the appellant had proved that the strap was not initially safe and fit for use. Its determination in the light of conflicting permissible inferences is controlling now, and the record shows a failure by the plaintiff to prove that his injuries were caused by the appellee's negligence.

Judgment affirmed.

SWAN, Circuit Judge (concurring).

I concur in the judgment of affirmance on the ground that the libellant failed to prove that his injuries were caused by the respondent's negligence. This being adequate to dispose of the case, it is unnecessary to consider the sufficiency of the defense based on the Longshoremen's and Harbor Workers' Compensation Act and I express no opinion on that subject.