**LAURO v. UNITED STATES.**
No. 90, Docket 20140.

Circuit Court of Appeals, Second Circuit.
May 22, 1947

Raymond Parmer, of New York City (T. Vincent Quinn, U. S. Atty., of Brooklyn, N. Y., and Kirlin, Campbell, Hickox &

Keating and Vernon Sims Jones, all of New York City, on the brief), for the United States.

Jacob Rassner, of New York City, for appellee.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

**CLARK, Circuit Judge.**

In previous consideration of this case, we certified to the Supreme Court of the United States, Lauro v. United States, 2 Cir., 157 F.2d 416, the question whether a libel for damages for wrongful death will lie under the Public Vessels Act of 1925, 46 U.S.C.A. § 781 et seq. The Supreme Court answered affirmatively, American Stevedores, Inc., v. Porello et al., 330 U.S. 446, 67 S.Ct. 847, and the case is now before us for disposition of its remaining issues.

Libelant's intestate, Lauro, was a longshoreman in the employ of a stevedore who, pursuant to contract, was loading a ship owned by the United States of America, the respondent to this libel. Immediately before the accident Lauro was engaged in giving signals to winchmen who were lowering a 17-ton road grader into a partly open hatch. Because a great deal of dunnage was piled on deck, Lauro was obliged to go atop the covered part of the hatch to do his signalling. While he was walking on the hatch cover, Lauro's foot slipped toward the hatch opening and he fell head first into the hold and was killed. Very soon after the accident two of his fellow workers examined the area of the hatch cover from which Lauro had fallen. On it they observed a patch of oil about $2\frac{1}{2}$ feet square. In this patch they saw a skid mark about two feet long. As they testified, the mark ended at a defective handle on the hatch cover close to the edge of the hatch aperture. In proper repair the edges of this handle were sunk into the hatch cover and its top was flush with the surface of the hatch cover. When they examined it, one end of it was protruding from two to three inches above the hatch cover. This testimony as to the condition of the handle was sharply controverted by respondent.

34

■ The District Court assessed liability against respondent for failure to provide Lauro with a safe place to work. Respondent's liability may be rested, however, on the perhaps somewhat broader duty to maintain the ship in a seaworthy condition. This duty has long been recognized as devolving upon shipowners in favor of members of their ships' crews Recently the Supreme Court declared that it existed also in favor of longshoremen loading and unloading ships—work which in earlier maritime history was performed by seamen. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. Where the ship remains under the control of the shipowner, this duty is absolute and continuous. The shipowner may not discharge it solely by furnishing a sound ship and making suitable equipment available. For if officers of the ship use unsuitable equipment the shipowner is liable for damage resulting therefrom, even though suitable equipment was available. Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. But when the owner surrenders control of any part of his ship to a stevedore in charge of loading and unloading, his duty of seaworthiness as to the part surrendered extends only up to the time the stevedore assumes control. Grasso v. Lorentzen, 2 Cir., 149 F.2d 127, 129, certiorari denied 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444. If therefore the agents of the stevedore, while he is in such control, create an unsafe condition where none existed before, the shipowner is not liable for accidents resulting therefrom.

■ On the day of the accident Lauro's crew had been working at other hatches for about 14 hours, but they had been working at this particular hatch for only approximately two hours before the accident occurred. There was no evidence that the unsafe condition of the deck and hatch cover was caused by Lauro or any of his fellow workers. On the contrary, there was testimony that no one but Lauro had mounted that particular hatch cover. And there was testimony that none of the loading crew had spilled oil on the hatch cover. The testimony therefore points rather clearly to the presence of the oil, at least by the time when Lauro and his gang started work at 9 p. m. The District Court found it there "at the time of the commencement of the work." Whether this has reference to the time when the stevedore commenced work on the ship at 8 a. m. or only when it commenced work at this hatch is not clear. But, unless we are to say that the stevedore was in complete control of this hatch from the time it entered the ship—and there was no evidence of that—the result is the same; for the shipowner's duty under the Seas Shipping case clearly operates until the stevedore has taken over. Compare Patton-Tully Transp. Co. v. Turner, 6 Cir., 269 F. 334, 338, 339. Consequently the District Court's finding of liability was not erroneous.

■ Having found liability, the District Court fixed the damages at $25,000. Claiming insufficiency of the judgment, libelant has appealed. The damages to be awarded should be gauged by the reasonable expectancy of pecuniary benefits which would have flowed from the continued life of the deceased. Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117, L.R.A.1917F, 367; The S. S. Black Gull, 2 Cir., 90 F.2d 619, certiorari denied Faye v. American Diamond Lines, 302 U.S. 728, 58 S.Ct. 50, 82 L.Ed. 562. At the time of the accident decedent was 45 years old. His wife, the libelant, aged 43, and six minor children survived him. His average yearly earnings for 6½ years prior to the accident were about $3,-000. Considering the work expectancy of the decedent and the fact that he would have used a sizable portion of his earnings for his personal benefit, we do not feel that the amount awarded by the District Court may be found legally erroneous.

■ A final question concerns libelant's right to sue. Sec. 5 of the Public Vessels Act of 1925, 46 U.S.C.A. § 785, bars suit by a foreign national unless it appears to the satisfaction of the trial court that his government under similar circumstances allows United States nationals to sue in its courts. In her libel libelant alleges her Italian nationality at the time of the accident; in her brief in this court she

claims United States nationality when the libel was commenced. She offered no proof of Italian law in the District Court.

Libelant now claims that proof of Italian law is unnecessary, since the libel may succeed under the Suits in Admiralty Act of 1920, 46 U.S.C.A. § 741 et seq., which contains no reciprocity requirement. But § 2 of that Act limits suit to cases where the United States ship involved is a merchant vessel. Lauro's ship, assigned by the War Shipping Administration to the Army and carrying Army, Navy, and lend-lease property, was a public vessel. The Western Maid, 257 U.S. 419, 432, 42 S.Ct. 159, 66 L.Ed. 299; Bradey v. United States, 2 Cir., 151 F.2d 742, certiorari denied 326 U.S. 795, 66 S.Ct. 484, 90 L.Ed. 483. The War Shipping Administration Act, 50 U.S.C.A.Appendix, § 1291, it is true, allows recovery under the Suits in Admiralty Act by "officers and members of crews" employed on United States vessels through the War Shipping Administration, regardless of whether the ship is engaged in merchant or public activity. But a stevedore employed in loading operations at the pier is hardly a member of the crew for the purposes of this statute. See Warner v. Goltra, 293 U.S. 155, 158, 55 S.Ct. 46, 79 L.Ed. 254.[1]

 Libelant must therefore make proof of Italian law or of her American citizenship at the commencement of the action. The case will be remanded to the District Court solely to allow her to do this and to amend her libel if necessary. If she does not succeed in showing her right to sue, judgment must go against her; if she does, the judgment she has already recovered should be reinstated.

Reversed and remanded.

L. HAND, Circuit Judge (concurring).

I do not think that in Grasso v. Lorentzen[1] we decided that the duty of seaworthiness to a stevedore extended only to the time when he enters the ship; but, even if we had, the decision of the Supreme Court in Seas Shipping Co. v. Sieracki,[2] has now assimilated a stevedore to a seaman in this respect, and, as I understand the law, the shipowner's duty to provide seamen with a seaworthy ship continues while he is aboard. In The Osceola,[3] Justice Brown, as the second ground of liability said: "That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." The Sixth Circuit made this the basis of its decision in Patton-Tully Transp. Co. v. Turner,[4] and, although I can find no later decision again so deciding, that case has been repeatedly cited with approval. If the case at bar turned upon whether the oil was spilled upon the hatch cover before the gang started to work, I should find difficulty in affirming the finding of fault; but I vote to do so for the foregoing reasons.

---

[1] Moreover, libelant cannot now recover in any event under the Suits in Admiralty Act, for she has failed to file her claim with the War Shipping Administration, as required by the War Shipping Administration Act and regulations promulgated thereunder. 46 CFR, Cum.Supp., §§ 304.-21, 304.24; Militano v. United States, 2 Cir., 156 F.2d 599, 601, certiorari dismissed States Marine Corporation v. Militano, 67 S.Ct. 193; Fox v. Alcoa S. S. Co., 5 Cir., 143 F.2d 667, certiorari denied 323 U.S. 788, 65 S.Ct. 313, 89 L.Ed. 628.

[1] 2 Cir., 149 F.2d 127.

[2] 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

[3] 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760.

[4] 269 F. 334.