## DANIELS
### v.
## PACIFIC-ATLANTIC S. S. CO.
### Civ. 12282.

United States District Court,
E. D. New York.
March 17, 1954.

Lexow & Jenkins, Suffern, for plaintiff, Herman B. Gerringer, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant, Louis J. Gusmano, New York City, of counsel.

BRUCHHAUSEN, District Judge.

The defendant, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., after both sides rest-

ed, moved for a directed verdict. The Court reserved decision on the motion. The case was then submitted to the jury. The jury failed to return a verdict and was discharged. Under that rule the Court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial. Consideration of the motion calls for an analysis of the plaintiff's claims, the evidence and the law applicable thereto.

The plaintiff's contention that no motion for a directed verdict was made is without merit. The Court is distinctly under the impression that such motion was made by the defendant and if the record does not clearly so establish it should be corrected accordingly. The minutes of the trial on January 22, 1954, at page 63c, allude to the motion, viz.:

"Mr. Gusmano: Now at this time your Honor, I would also like to make the motions which were reserved at the end of the plaintiff's case, as distinguished from my motions, for a directed verdict at the end of both cases."

The plaintiff by his amended complaint alleged that he sustained personal injuries, while employed as a seaman on the S. S. Jeremiah Black, owned, operated and controlled by the defendant, and docked at a pier in the City of New York. There are two causes of action involved, viz.:

1. A claim for damages for such injuries, based upon the alleged negligence of the defendant, pursuant to the so-called Jones Act, 46 U.S.C.A. § 688.

2. A claim for indemnity for such injuries, based upon the alleged unseaworthiness of the vessel, pursuant to the admiralty or maritime law.

The plaintiff testified that he was employed as the night mate on the vessel and sustained the injuries on June 21, 1951, at about 8:20 p. m., while walking in the wheelhouse on a tour of inspection, that at a point about a foot away from the telemotor, both of his feet slipped from under him, that he fell on his back and his head caught the deck,

that when he came to he felt oil on his hair and clothes, that he went back into the wheelhouse to see what happened, that about two feet from the telemotor there was a pool of oil at the place where he slipped, that it was about a quarter of an inch thick and about two feet around. There was no evidence of oil on the wheelhouse floor at any time prior to the time when the plaintiff claimed he slipped on it. It appeared that the telemotor was operated by hydraulic pressure of oil pumped through a pipe or tube running from the engine room to the telemotor in the wheelhouse, that after some months of operation small quantities of air may get into the system and that it may be purged therefrom by increasing the pressure of the oil in the pipe, thereby causing the air to emerge from the telemotor in the wheelhouse, sometimes accompanied by a small quantity of excess oil. The uncontradicted evidence is that the telemotor was so purged during the afternoon of the day of the accident, that the telemotor was not defective and was in good working condition and that there was no oil upon the floor after the purging process was completed.

■ It should be borne in mind that a cause of action under the Jones Act, supra, is for a tort involving negligence, while a claim for indemnity for damages for personal injuries sustained through unseaworthiness of a vessel arises out of breach of contract of implied warranty of fitness of the vessel. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

■■ There is no evidence that the oil on the wheelhouse floor was there for any length of time prior to the accident. Unless the defendant had actual or constructive notice of the condition so as to furnish it with an adequate opportunity to remedy the condition, then there is no cause of action for negligence under the Jones Act. Boyce v. Seas Shipping Co., 2 Cir., 1945, 152 F.2d 658; Anderson v. Lorentzen, 2 Cir., 160 F.2d 173; Lauro v. United States, 2 Cir., 162 F.2d 32; Guerrini v. United States, 2

Cir., 1948, 167 F.2d 352; Adamowski v. Gulf Oil Corporation, D.C., 93 F.Supp. 115; Id., 3 Cir., 197 F.2d 523, certiorari denied Adamowski v. Bard, 343 U.S. 906, 72 S.Ct. 634, 96 L.Ed. 1324; Holliday v. Pacific Atlantic S. S. Co., D.C., 99 F. Supp. 173, reversed on other grounds 3 Cir., 197 F.2d 610, certiorari denied 345 U.S. 922, 73 S.Ct. 780, 97 L.Ed. 1354; Shannon v. Union Barge Line Corp., 3 Cir., 194 F.2d 584, certiorari denied 344 U.S. 846, 73 S.Ct. 62, 97 L.Ed. 658. The Court adheres to the dismissal of the claim for negligence at the time both sides rested. Inasmuch as some of the cited cases involve claims for unseaworthiness under the admiralty law, as well as causes of action for negligence under the Jones Act, further reference is hereinafter made to them.

■ The Court has given careful consideration to the issue founded upon the cause of action for unseaworthiness of the vessel. The original concepts of unseaworthiness under the admiralty law were the failure to keep the vessel fit to carry its cargo or to supply or maintain the ship's appliances. In an early case, The Silvia, 171 U.S. 462, 19 S.Ct. 7, 8, 43 L.Ed. 241, the Court said: "The test of seaworthiness is whether the vessel is reasonably fit to carry the cargo which she has undertaken to transport." In the case of The Osceola, 1903, 189 U.S. 158, 159, 23 S.Ct. 483, 487, 44 L.Ed. 760 unseaworthiness was defined as "a failure to supply and keep in order the proper appliances appurtenant to the ship." The later case of The Arizona v. Anelich, 1936, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 is to the same effect. In the footnote of that case, 298 U.S. at page 121, 56 S.Ct. at page 710, the Court said:

"The seaman's right of indemnity for injuries caused by defective appliances or unseaworthiness seems to have been a development from his privilege to abandon a vessel improperly fitted out. * * * This case [Dixon v. The Cyrus, Fed.Cas. No.3,930, 2 Pet.Adm. 407] was relied on in several early cases recognizing the seaman's right to conse-

quential damages for injuries resulting from faulty equipment."

The case of Mahnich v. Southern Steamship Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, is to the same effect.

The doctrine of unseaworthiness has been extended to include improper stowage of cargo, causing personal injuries. The cases of La Guerra v. Brasileiro, 2 Cir., 1942, 124 F.2d 553, certiorari denied 315 U.S. 824, 62 S.Ct. 918, 86 L.Ed. 1220, and Fodera v. Booth American Shipping Corporation, 2 Cir., 1947, 159 F.2d 795, support that rule.

The cases involving defective or missing equipment, appurtenant to a vessel resulting in personal injuries to seamen, cited in the briefs submitted herein, are clearly within the accepted definition of unseaworthiness, viz.: The Seeandbee, 6 Cir., 1939, 102 F.2d 577; Lauro v. United States, 2 Cir., 162 F.2d 32; Bentley v. Albatross S. S. Co., 3 Cir., 1953, 203 F.2d 270; Petterson v. Alaska S. S. Co., 9 Cir., 1953, 205 F.2d 478; Hawn v. Pope & Talbot, Inc., D.C., 99 F.Supp. 226; Id., 3 Cir., 198 F.2d 800; Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, and Keen v. Overseas Tankship Corp., 2 Cir., 1952, 194 F.2d 515, certiorari denied 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363. In The Seeandbee case, the Court held that the presence of grease and oil on the deck did not constitute unseaworthiness but the absence of a guard rail did so. In the main opinion in the Lauro case, negligence was predicated on the fact that the claimant was injured by slipping on a patch of oil which was shown to be present for from two to fourteen hours, prior to the accident. By way of observation, the concurring opinion in that case shows that the Judge writing it held the respondent liable on the ground of unseaworthiness of the vessel. The evidence was the accident involved not only a patch of oil but a defective appliance, a handle on a hatch cover, protruding about three inches above a hatch cover, whereas if in proper repair the handle would have been flush with the hatch cover. In the Bentley case, the absence of covers

on a radiator, was the proximate cause of the injuries sustained. In the Petterson case, a defect in loading apparatus, caused the accident. The Hawn v. Pope & Talbot, Inc. case resulted in recovery by the claimant where there was a missing hatch cover. In the Keen v. Overseas Tankship Corporation case, the libellant was assaulted by a fellow crew member whom the respondent should not have employed.

■■ The mere presence of grease or oil or other transitory substance on a deck of a vessel, causing one to slip and sustain injuries has been held not to constitute unseaworthiness. The ship owner is not an insurer of safety. Hanrahan v. Pacific Transport Co., 2 Cir., 1919, 262 F. 951, certiorari denied 252 U.S. 579, 40 S.Ct. 345, 64 L.Ed. 726; The Seeandbee, supra; Adamowski v. Gulf Oil Corporation, supra; Cookingham v. United States, 3 Cir., 1950, 184 F.2d 213; Holliday v. Pacific Atlantic S. S. Co., supra; Shannon v. Union Barge Line Corp., supra, and Hawn v. Pope & Talbot, Inc., supra. In the Hanrahan v. Pacific Transport Company case, the Court determined that the temporary absence of a handrail did not warrant a finding of unseaworthiness. As heretofore stated, it was held in The Seeandbee case that the presence of grease and oil on the deck did not render the vessel unseaworthy. In the Adamowski case [93 F.Supp. 117], the plaintiff claimed he slipped while going through a dark passageway, where later an oil spot was discovered. The Court said, " * * * the defendant cannot be held liable for unseaworthiness * * *. The passageway in which the plaintiff slipped was perfectly sound." In the Cookingham case, it was held that a transitory unsafe substance on a stairway, such as jello, was not unseaworthiness. In the Holliday case, the Court followed the Cookingham case and held that wires protruding from a package or box in an ice-box, did not amount to unseaworthiness. In the Shannon case, the claimant slipped on an oil spot on a deck and fell against a metallic bar, running diagonal-

ly across a doorway. The bar was in good repair. It was held that no unseaworthiness existed. In the Hawn v. Pope & Talbot case, the Court followed the Cookingham case and stated that a deck made slippery because of grain dust from loading was a transitory unsafe condition, resulting from the normal use and operation of the ship, involving no inherently defective condition and hence not unseaworthy.

■ The weight of authority is that an injury caused by slipping on a spot of oil or other matter of a transitory nature in and of itself does not support a cause of action for damages for unseaworthiness.

The defendant's motion for a directed verdict is granted.