THOMAS GROONSTAD, as Administrator, etc., of ISAAC C. ISAACK-SEN, Deceased, Respondent, *v*. ROBINS DRY DOCK AND REPAIR COMPANY, Appellant.

Second Department, June 9, 1922.

Ships and shipping — action for death caused by injuries suffered while repairing ship — action against corporation engaged to make repairs — accident caused by defective ringbolt which was part of ship's permanent equipment — defendant bound to inspect if appearance of bolt indicated apparent defects — whether appearance of bolt indicated defect was question for jury.

In an action to recover for the death of plaintiff's intestate, who was killed while making repairs on a steamship, it appeared that the defendant corporation, in whose employ the deceased was at the time of the accident, was engaged in repairing the steamship in question, and that the accident was due to the parting of a ringbolt, a part of the ship's permanent rigging. *Held*, that the defendant could not use the ship's rigging, including the ringbolt, blindly and without looking at it, and if appearances indicated danger or defects, the duty of further inspection or tests to ascertain if the indicated danger or apparent defects were real or substantial rested on the defendant.

It appeared on the trial that the ringbolt broke at the point where it had been welded; that it was not properly welded and there was a defect in the center; that an examination of the ringbolt after the accident showed rust which extended to the outside of the break, and that the rust was above the deck, visible from the outside to ordinary inspection, and was a contributing cause to the breaking of the bolt. Under the facts outlined, it was a question for the jury to say, in view of the extraordinary strain that was placed upon the ringbolt

by the defendant, whether the rust on the outside at the point of welding indicated danger in its use or a defect in the bolt that rendered it negligent to use it without further test.

APPEAL by the defendant, Robbins Dry Dock and Repair Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 1st day of December, 1921, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

The plaintiff's intestate was in the employ of the defendant as a laborer. On October 19, 1918, he was engaged, with other fellow-servants, in hoisting a boiler tube from the hold of the French war cruiser *Marcellaise* through the funnel to the deck, when the rigging which carried the load collapsed, and the boiler tube fell upon him, causing his death. The accident was due to the parting of a ringbolt to which the hoisting rigging was made fast at the stern of the cruiser.

The complaint charged the defendant with negligence in failing, among other things, properly to inspect the ringbolt, and in using appliances, including the ringbolt, that were unfitted for the work for which they were being used.

*A. G. Maul* [*Thomas J. Brennan* with him on the brief], for the appellant.

*Peter Baumer* [*Grant Hoerner* with him on the brief], for the respondent.

BLACKMAR, P. J.:

The ringbolt, the parting of which caused the death of plaintiff's intestate, was part of the permanent rigging of the ship. To this ringbolt was made fast the end of the steel cable which supported the defendant's block and fall, and it proved insufficient in strength to sustain the load thereby put upon it. The duty of the master to his servant in using the permanent rigging or appliances of the ship is definitely settled by recent decisions of the courts. (*Dziengelewsky* v. *Turner & Blanchard, Inc.*, 191 App. Div. 341; *Liverani* v. *Clark & Son*, Id. 337; 231 N. Y. 178.) The rule can best be stated in the language of the opinion of the Court of Appeals (*supra*, 181) as follows: " Under such circumstances what was the duty which the law placed upon the stevedore with relation to the use of the ship and its parts? In the absence of any condition to excite suspicion or to suggest defects or danger, the stevedore might assume the safety of the appliances and that due care had been used by the ship owner to keep and maintain them in reasonably

safe condition. * * * This does not mean that the stevedore could use the tackle or the ship's parts blindly and without looking at them, but that if appearances indicated no danger or defects, an inspection by tests for latent imperfections was not required of it."

The charge of the justice presiding at the trial, considered in its whole scope and meaning, properly instructed the jury on the measure of the duty of inspection of the ship's rigging which rested on defendant. The defendant could not use the ship's rigging, including the ringbolt, blindly and without looking at it; but if appearances indicated danger or defects, the duty of further inspection or tests to ascertain if the indicated danger or apparent defects were real or substantial, rests on the defendant.

The question presented and argued on this appeal is, whether the appearance of the ringbolt indicated weakness or danger of giving way under the strain to which the defendant intended to subject it. If it did, there was, as to defendant's negligence, a question of fact for the jury. There was evidence that an examination of the ringbolt soon after the accident showed rust which extended to the outside of the break; that the ringbolt was not properly welded, leaving a defect in the center; that the weld parted where the rust showed; that it was an overlapping weld, and was rusted where it was welded. The rust was above the deck, visible from the outside to a cursory inspection; and, according to expert testimony, was a contributing cause to the breaking of the ringbolt. To this seven-eighths-inch ringbolt was fastened a one and one-quarter-inch steel cable, which led to the mainmast, from there to the foremast, and then down to the deck, and was fastened to the windlass at the bow of the ship. On the span of about 100 feet between the masts was rigged a traveler, to which was attached a block and fall, which the defendant used to hoist the boiler parts through the funnel. Whether, in view of the strain to which this ringbolt was subjected, the showing of rust on the outside at the point of welding indicated danger in its use, cannot be decided as matter of law. No amount of knowledge of the law renders a tribunal competent to decide this question. It is, in its very nature, a question of fact. The ringbolt of seven-eighths-inch iron was welded by a blacksmith, with a scar and an indication of rust showing the point of union. It was subjected to a heavy additional strain by the defendant's work. Did the outside appearance, as seen by a casual observer, indicate weakness or a defect that rendered it negligent to use it without further tests? There was an interior defect in the welding which could have been disclosed by the hammer test. Did the rust at the scar indicate to a skilled observer the

interior defect? These are questions of fact for the jury, and it follows that the exception to the motion to dismiss was not well taken.

The defendant urges an exception to the charge of the court on the duty of the defendant with respect to substituting other appliances for the ringbolt if the defendant doubted its strength or fitness. The instruction was at the request of plaintiff's counsel, and although subject to criticism as to form and verbiage, it is enough to say that on the whole the jury were properly instructed as to the duty of the master.

No error being found in the exceptions urged and considered, and no further points being presented by the appellant, the judgment and order should be affirmed, with costs.

Present—Blackmar, P. J., Rich, Kelly, Jaycox and Young, JJ.

Judgment and order unanimously affirmed, with costs.