**ALTADONA v. UNITED STATES et al.**

United States District Court
S. D. New York.

May 22, 1950.

McLaughlin & Fensterstock, New York City, Harry Austin, New York City, of counsel, Proctors for libellant.

Haight, Griffin, Deming & Gardner, New York City, Edgar R. Kraetzer, James M. Estabrook, New York City, of counsel, Proctors for respondents.

Alexander & Ash, New York City, Edward Ash, Sidney A. Schwartz, New York City, of counsel, Proctors for Impleaded respondent.

CONGER, District Judge.

Libellant sued the United States of America and the American Export Lines, Inc. for personal injuries received on board the S. S. Eugene Hale on November 12, 1944 while libellant was in the employ of Mercantile Ship Repair Co., Inc. Subsequently by stipulation American Export Lines, Inc. was withdrawn as a respondent.

The respondent, United States of America, duly impleaded Mercantile Ship Repair Co., Inc. under the 56th Admiralty Rule of the Supreme Court, 28 U.S.C.A.

The case was tried on the admiralty side of the Court. After the case had been submitted and before a decision had been rendered, respondent made a voluntary settlement with libellant which settlement was approved by this Court as to the reasonableness of the amount at a hearing on August 12, 1947.

At that time Mercantile stated that it could neither approve nor disapprove the settlement because of the pendency of its reorganization proceeding in the United States District Court for the Eastern District of New York.

The only issue left now is for the determination of this Court of the right of respondent to recover in whole or in part from Mercantile on the basis of the evidence adduced at the trial of this action.

In the impleading petition respondent contended that if libellant suffered any damage and was entitled to any recovery against the United States it was by reason of the fault of Mercantile, its agents and employees and because of its failure to perform the obligations resting upon it in the performance of the work it contracted to do.

It was more specifically charged that Mercantile instead of exercising reasonable care in inspecting and avoiding the crea-

tion of dangerous conditions improperly used through its employees the appliances afforded them by the respondent and that in doing the work they negligently and carelessly replaced the starboard rail in the vicinity of Nos. 4 and 5 hatches and neglected to take the precaution of inspecting the said starboard rail during the course of the work.

There was no proof on the trial that Mercantile in the course of the work created a dangerous condition, nor that it carelessly replaced the starboard rail at the place of the accident. As a matter of fact, Mercantile at or about No. 4 hatch had nothing to do with repairing the rail or replacing it. It amounts to this, that Mercantile's men in the course of the work were required to be in and about No. 4 hatch and the rail adjacent thereto.

An issue has been raised here as to who had control of the ship. The testimony is not too definite on this point. Mercantile was doing a thorough repair and overhaul job on the ship which, however, was not in dry dock and respondent was in general control of the vessel.

As I see it, the question of control here is not the deciding factor. Whether Mercantile was in complete charge or not is not relevant. It still owed a duty to its employees to use reasonable care and precaution to protect them and furnish them a safe place to work.

After all, the real issue here is whether or not it did this and whether or not it was required under the law to make an inspection of those parts of the ship where its men were working and if so what sort of an inspection was required.

The Eugene Hale, a liberty ship, was being repaired by Mercantile. At the time the Eugene Hale was tied up at Pier 41, Brooklyn.

Libellant was a rigger in the employ of Mercantile.

At the time of the accident, among other things, a strap job was being done on both the port and starboard sides of the ship. We are only concerned with the work being done on the starboard side near No. 4 hatch. At about this locale a scaffolding had been placed outboard along the side of the ship. The consensus of the evidence showed that it was about 4 or 5 feet to as much as 7 to 9 feet below the deck level. The evidence on this point is conflicting.

On the day of the accident (November 12, 1944) the gang of riggers, of which libellant was one, were ordered to work in the vicinity of No. 4 hatch. Up to a certain point on the starboard side there was a permanent or solid ship's rail and then running aft therefrom were a series of metal stanchions or posts with an iron chain running through the top of each of the stanchions.

The whole arrangement of stanchions and connecting chain were a part of the permanent ship's gear. Mercantile did no work in connection with these stanchions or the chain or chains opposite No. 4 hatch or in the immediate vicinity. The gang of riggers with libellant were ordered by their foreman to clear up the ship's deck. Three or four of them were engaged in lifting from the deck a heavy piece of iron. During this operation libellant leaned against the guard rail and the footing of two of the stanchions gave way and libellant fell from the deck down to the scaffolding suspended on the ship's side at this point. He struck his head against a piece of iron lying on the scaffolding. Libellant was lifted to the deck, taken to a first aid station and finally to a doctor's office. He was not sent to a hospital. From the medical testimony produced by libellant at the trial it does appear that libellant was seriously and permanently injured. It will not be necessary for me to go into that branch of the controversy.

After the accident it was noticed that the chain was not broken but that two of the stanchions with the chain attached hung over the side of the ship. It was noticed that two of the stanchions had broken loose from the deck. These stanchions had been permanently fixed to the deck by two or three plate angles which were welded to the deck and then welded to the stanchion. These plates had come loose from the deck. The stanchions and the footings were examined right after the accident by the rig-

ger foreman and several of the riggers. They testified that the plates or footings attached to the stanchions had given way from the deck; that they were all rusted on the bottom and in one instance there was evidence of a bad weld.

It should be noted (and it is important) that this condition of rust and decay showed at the bottom of these plates where they had been attached to the deck.

This testimony came solely from the witnesses produced by libellant. Respondent introduced no testimony as to the condition of the stanchions and of the plates holding them in place. There was no testimony on the part of anyone that the deck around the stanchions or the plates at the foot of the stanchions showed any indication of being rusty or defective. There was no evidence of any visible defect at this place.

Assuming that Mercantile had control of that part of the ship where its men were working, i. e. the deck and the stanchions at the point of the accident, was it remiss in its duty and its obligations to such an extent that may be said to have been negligent?

Mercantile had done nothing to create a dangerous condition at the place of the accident. There was nothing visible to call its attention to any defects in the stanchions, the plates or in the deck about the stanchions. There was no visible condition there showing to excite suspicion or to suggest defects or danger.

■ Under the circumstances Mercantile might assume that the place where its men were working, including the stanchions, were safe and in a safe condition. That does not mean that Mercantile could blindly have its men work in and around the guard rail without looking at it but if the appearance indicated no danger or defects an inspection for latent defects was not required of it. It would be unreasonable in the absence of any visible sign of defectiveness to expect Mercantile to minutely examine each and every part of the vessel where its men were working and to apply expert scrutiny of those parts and places before permitting its men to work there. Liverani v. Clark & Son, 231 N.Y. 178, 131

N.E. 881; Grasso v. Lorentzen, 2 Cir., 149 F.2d 127.

■ Respondent contends there was no inspection and/or no proper inspection but it gives no formula as to the manner and extent of such inspection required under the circumstances.

The proof is that Mercantile did make an inspection of the guard rail and the stanchions. Casual though it might have been, I think it was sufficient under the circumstances.

The rigger foreman (the snapper), a witness for libellant, testified in response to a question by the Court that he had not inspected the stanchions nor the chains before his gang went to work that morning. On cross-examination, however, the foreman testified he did look around to see what work was to be done and what facilities there were for doing the work; that he looked at the chain rail; that he made no inspection and in explaining what he meant by inspection he stated, "I did not examine it to see if it was defective. All I done was take an ordinary glance that any rigger would take at it to see if it was there and I took it for granted everything was alright. * * * It looked like other stanchions and other rails look to me. The only thing I saw was one chain missing there. * * * They didn't look so terribly good."

However, the safety engineer for Mercantile testified that in the performance of his duties he inspected the Eugene Hale to see if there were any hazards on board. This inspection was made the morning before the accident occurred. He described the various inspections he made and further that he inspected the part of the ship in the area where the men were working; that he looked at the railings and chains; that he saw the stanchions and chains were secure; that he did not shake them, but just looked at them and observed that everything was in its right position; that he saw nothing wrong.

The only proof in the record on the question of inspection shows that a casual or

visual inspection did not disclose any observable and visible defects.

The respondent had the burden of proof on this issue. I find that they have not sustained that burden. I can only conclude that from the testimony I cannot spell out negligence on the part of Mercantile. Port of New York Stevedoring Corporation v. Castagna, 2 Cir., 280 F. 618.

My holding above precludes the necessity of discussing the question of indemnity or contribution by Mercantile, in as much as both are predicated upon fault or negligence, in whole or in part on its part, which I do not find.

I find in favor of the impleaded-respondent and against the respondent: the impleading petition of the United States of America is dismissed with costs.

Settle decree on notice.